JOHN HAWE, APPELLANT, v. MICHAEL A. HIGGINS, ADMIN- ISTRATOR, APPELLEE.

FILED JUNE 13, 1911.   No. 16,433.

1. **Vendor and Purchaser:** JOINT PURCHASERS.  One who furnishes money to a purchaser of real estate under an agreement that he shall receive as his compensation therefor one-half of the profit which the purchaser may realize upon such purchase, does not, by reason of that fact alone, become a joint purchaser of such property.

2. ———: ———.  In order to constitute such person a joint purchaser, it must further appear that he is, in fact, to become invested with an interest in the title and actual ownership of such real estate.

3. **Trial:** SPECIAL FINDINGS.  A special finding by a jury, though sustained by the evidence, must be disregarded when the fact established by it is irrelevant to the issues tendered by the pleadings and insisted upon by the adverse party during the trial.

4. ———: JURY: VIOLATION OF INSTRUCTIONS. It is the duty of a jury to find a verdict according to the law as given in the instructions of the court; and when they clearly violate this duty the court should set aside the verdict.

APPEAL from the district court for Colfax county: CONRAD HOLLENBECK, JUDGE.  *Reversed.*

*A. M. Post* and *George W. Wertz,* for appellant.

*J. J. Sullivan* and *W. M. Cain, contra.*

FAWCETT, J.

In this opinion we have simply considered and decided the case actually tried in the district court and presented to this court.

The petition alleges that on July 13, 1908, the parties entered into a contract, not in writing, whereby defendant agreed to sell and convey to plaintiff within a reasonable time thereafter a quarter section of land, described, for the consideration of $11,600; that on the 23d day of July defendant, pursuant to said contract, made and delivered to plaintiff a deed for such land; that thereafter, on July 27, "the defendant by fraud and force took and removed said conveyance from the possession of the plaintiff, and it is not now in the possession or under control of the plaintiff;" that plaintiff "has tendered to defendant the full agreed purchase price of said real property and demanded a deed of conveyance thereof, but the defendant has refused and now refuses to so convey said property, and has wrongfully and without plaintiff's consent rescinded the aforesaid contract of sale, to the plaintiff's damage;" that the land was during all of the times mentioned and now is of the value of $16,000, and prays judgment for $4,400.

The answer denies generally all allegations of the petition not admitted; expressly denies that defendant ever entered into any contract with plaintiff for the sale or conveyance to him of the lands in controversy; and alleges that on July 13 plaintiff and defendant engaged in a bantering conversation with reference to the taxation of farm lands in Colfax county; that in the course of such bantering conversation defendant "as a joke and a jest" offered to sell to plaintiff the lands in controversy at the assessed valuation for the year 1907, which was $72.50 an acre; that defendant at no time intended to sell the land to

plaintiff, which at all times plaintiff well knew; that at the time of making said jesting offer defendant informed plaintiff that, if there was to be any one connected with said transaction "as purchaser" except plaintiff alone, said offer was withdrawn, and the defendant would not make any deed warranting the title to said land; that on July 23, "falsely and fraudulently representing to defendant that there was no one connected with the transaction as purchaser except plaintiff alone, plaintiff falsely and fraudulently sought to take advantage of defendant's aforesaid jesting and joking offer by accepting same and treating it as an actual offer, and caused a deed of conveyance of said land to be prepared, which deed, contrary to the aforesaid jesting arrangement of said parties, contained a covenant whereby the grantor covenanted to warrant and defend the title to said lands against the claims of all persons whomsoever;" that "on said 23d day of July, 1908, defendant, still believing that said deed was in furtherance of the aforesaid jesting arrangement between himself and plaintiff, and believing plaintiff's false and fraudulent representations that he, said plaintiff, was the only person connected with said transaction as purchaser, and believing that said deed contained no covenant whereby the grantor therein warranted to defend the title to said lands against the claims of all persons whomsoever, signed same, never intending to sell or convey said lands to plaintiff."

The reply admits that defendant conveyed to plaintiff the property mentioned in the answer for the consideration of $72.50 an acre, and thereby covenanted to warrant and defend the title so conveyed, and denies each and every other allegation in the answer.

The following special interrogatories were submitted to and answered by the jury: "Q. 1. Did Higgins as a condition of the sale to Hawe stipulate that George Wertz should have no connection with the transaction? A. Yes. Q. 2. If you answer 'yes' to the foregoing question, state whether Wertz, without Higgins' knowledge, became connected with and had an interest in the transaction. A.

Yes. Q. 3. Did Higgins in negotiating with Hawe stipu-
late that the deed, which he was to give, should be a deed
without recourse upon him? A. Yes. Q. 4. Did Higgins,
when he signed the deed, which has been given in evidence,
intend to make a deed which would be without recourse
upon him? A. Yes." With these special findings the jury
returned a general verdict for plaintiff for $38.33. Plain-
tiff thereupon moved the court to set aside and vacate the
special findings for the reasons: "(1) Said findings and
each thereof are contrary to law. (2) Said findings and
each thereof are unsupported by the evidence. (3) Said
findings and each thereof are foreign to the issues in this
cause. (4) The court erred in submitting said special find-
ings and each thereof." Plaintiff also filed a motion for a
new trial in which the special findings were again assailed.
Defendant entered no objection or exception to the general
verdict and made no move for judgment upon the special
findings. Plaintiff's motion for a new trial was overruled
and judgment entered upon the general verdict. Plaintiff
appeals.

We think plaintiff's assault upon the special interrog-
atories submitted to the jury is well grounded. No. 1
called for the finding of the jury as to whether or not de-
fedant as a condition of the sale to plaintiff stipulated that
George Wertz should have no connection with the trans-
action. The allegation in the answer is: "Defendant in-
formed plaintiff that, if there was to be any one connected
with said transaction as purchaser except plaintiff alone,
said offer was withdrawn," etc. It will be seen that the
question submitted to the jury was broader than the
issue tendered by the answer. We do not think it can be
claimed that one who lends money to a purchaser of land
to enable him to make the purchase thereby becomes con-
nected with the transaction "as purchaser." The issue
tendered by the answer was that the offer would be with-
drawn if any one besides plaintiff was interested "as pur-
chaser;" that is, as owner. Conceding that defendant had
a right to impose conditions, when he alleges in his answer

the conditions imposed, as a defense, he is limited to those conditions upon the trial of the case and in the submission of the same to the jury. No. 2 is assailed for the reason that there was no controversy upon the question involved in that interrogatory. It was not disputed, but was testified to upon the trial by plaintiff and his witnesses, that Wertz, without defendant's knowledge, became connected with and had an interest in the transaction, in that he furnished the money for plaintiff to make the purchase, and in consideration for so doing was to receive from plaintiff a division of whatever plaintiff might realize in the way of a profit out of his purchase of the land. There being no controversy upon that point, that interrogatory should not have been submitted to the jury. Interrogatory No. 3 is objected to for the reason that this suit is not based upon the deed; that the only purpose of the deed in this suit was to prove the contract of sale and save it from the statute of frauds. Specific performance is not asked. We are therefore constrained to say, as does plaintiff in his brief, "Why ask the jury this question?" No. 4 asks the jury to say whether when defendant signed the deed he intended to make a deed which would be without recourse upon him. Upon this there is no dispute, nor did plaintiff make any objection to the deed being so signed. When the deed was prepared by Mr. Folda, the words "without recourse," either before or after the line for the signature of the grantor, were not written in. When defendant was about to sign the deed, he called attention to this fact, and stated that the agreement was that the deed was to be "without recourse." Plaintiff made no objection to his signing it that way; whereupon, he signed the deed, and then wrote under his name the words "with recourse." When interrogated upon the subject, he said that it was his intention to sign "without recourse," and that the writing of the word "with" instead of the word "without" was simply a mistake; but that he intended to sign the deed, and that the mistake was simply in using the wrong word in the pro-

posed limitation. The deed had not yet been recorded, and
the evidence shows that plaintiff was perfectly willing to
have that correction made. But suppose he had refused,
after the money had been paid over and the deed delivered,
to consent to such correction, that would not give defend-
ant the right to get the deed in his possession for examina-
tion and then carry it away and refuse to return it. We
are unable to see any justification in the submitting of any
of the special interrogatories to the jury.

While we are impressed with the argument that, when
the negotiation between plaintiff and defendant began, it
was largely in the nature of banter, as contended for by de-
fendant, the evidence is overwhelming that it soon passed
beyond the stage of banter and jest. Defendant stated that
farm lands were assessed too high. Plaintiff combated
that statement, whereupon defendant said that he would
sell his land at its assessed valuation. Plaintiff said that
he would take the quarter section in dispute at that valu-
ation, which it was conceded was $72.50 an acre. Defend-
ant answered that he would sell it to him at that figure.
When asked how long a time he would give plaintiff to
raise the money, he answered that he would give him
ten days. Defendant testified that, when discussing
where plaintiff would raise the money, plaintiff said he
thought he could get it from Wertz; that he said, "I
turned right to him, and said, 'I cut that man out. I will
have no dealing with that man, or no deal that he is
connected in.'" This testimony is contradicted by
plaintiff, and by other witnesses who were present and
heard the conversation. They all say substantially that
no conditions were imposed. One witness testified that,
when plaintiff asked defendant how long he would
give him to raise the money, defendant said ten days,
"and he said he did not care where he got the money
so he got it." Another witness testified that he heard
defendant say to plaintiff, "'You get the money and
you can have the land;' Mr. Hawe answered him, 'You
don't worry, I will have the money.' * * * Hawe was

saying, 'You can depend upon it I will be Johnny with
the money;' " that Mr. Higgins answered, "That is all I
want." The same witness testified that on the evening of
the 23d he heard defendant say, " 'That the land was sold
and he had more to sell the same way,' and Hawe said,
'If he had the money he would buy all he had to sell at
that price.' " Plaintiff testified that the name of George
Wertz was used in connection with his talks with defend-
ant about raising the money. "Q. What did he say when
you mentioned the name of George Wertz in connection
with this case? A. Well, he said George Wertz' family
and my family put together could not raise enough money
to buy the land, and then he said that night, before the
deed was made out, he stated something about his not want-
ing George Wertz' name to appear in it." The witnesses
who heard the talk between plaintiff and defendant, and
the banker to whom they went to have the deed drawn, all
testified to the effect that they did not observe anything to
indicate that the deal being discussed by plaintiff and de-
fendant was not an ordinary transaction. The banker was
asked, "Did you observe any evidence of jest or banter in
the matter of this deal by either of the parties to the trans-
action? A. As I said, I think it was an ordinary deal. I
observed nothing of a banter or jest about the matter."
Defendant himself testified: "Q. And he said he would
take this particular quarter in dispute in this action? A.
Yes, sir. Q. And you said, 'All right, raise the money and
you can have it'? A. Yes, sir. Q. Were you bluffing? A.
Yes, sir. Q. And Mr. Hawe called your bluff? A. Yes,
sir. Q. And he raised the money and you walked up to
the captain's office like a man to make the deed? A. Yes,
sir. Q. The joke was past then? A. Yes, sir." The evi-
dence shows that on the evening of the 22d, one day before
the expiration of the ten days defendant had given plain-
tiff to raise the money, Mr. Wertz deposited in the bank
the purchase price, $11,600, to the credit of plaintiff; that
in order to raise this money he had made a trip to Lincoln,
had done considerable telephoning, and had put up his own

securities; that on the 23d plaintiff and defendant went
to the bank and instructed Mr. Folda to prepare a deed.
The deed was prepared and signed in the manner already
stated. Plaintiff drew his check in favor of defendant for
the consideration, $11,600. Defendant said he wanted the
cash. The banker commenced getting out the money, some
of it apparently in sacks of gold and silver, when defend-
ant concluded that he did not want to carry the money
away, and asked the cashier to give him a certified check,
which was done. He then changed his mind again, and
asked for a New York draft for the amount, which was
drawn by the cashier. Defendant, who is a customer at the
bank and in the habit of keeping private papers there, told
the cashier to put the draft with his other papers. The
deed was delivered to plaintiff, who was also a customer of
the bank, and he handed it to the cashier, with the request
that he keep it until he, plaintiff, called for it. The evi-
dence further shows that plaintiff's arrangement with Mr.
Wertz was that he would leave the deed in the bank until
he made a sale of the land, which he intended to do at
once, but no such statement was made or condition im-
posed at the time he delivered the deed to the cashier. The
parties thereupon separated. Some two or three days there-
after defendant went to the bank, and asked Mr. Folda, the
cashier, to let him see the deed. The deed was handed
to him, he looked it over, put it in his pocket, and said he
was going to take it and show it to his attorney; that
it was not made out right; and upbraided Mr. Folda for
the error in the deed, viz., the word "with" recourse in-
stead of "without." When he left the bank, Mr. Folda
left at the same time, and said he would go and tell
Mr. Hawe that he, defendant, had taken the deed, and
he did communicate that fact to Mr. Hawe. The deed
was never returned to the bank nor again delivered to
plaintiff. Instead of returning the deed to Mr. Folda,
defendant asked him to figure up interest on the $11,600
for five days. Upon Mr. Folda's doing so, defendant
gave him his check for the amount of such interest,

$12.90. Mr. Folda subsequently, on his own motion, and without the knowledge or consent of plaintiff, canceled the New York draft which had been issued to defendant, and testified that he is now holding the $11,600, as well as the $12.90 check. This conduct on the part of defendant brought about the present action by plaintiff. The evi-. dence is ample to sustain a general verdict in favor of plaintiff.

In his instructions the court charged the jury, among other things: "9. If the jury believe from the evidence that the plaintiff and defendant entered into a contract for the sale of said land as set forth in plaintiff's petition, and the plaintiff has fully performed all the terms and conditions of said contract, and that the defendant has without just cause or legal excuse failed to perform his part of the obligations of said contract, then your verdict should be for the plaintiff.

"10. If the jury do not so believe, or if you believe from a preponderance of the evidence that said contract was made in a jest, and without any intention on the part of either party to comply with said contract, or if you do not believe from the evidence that the minds of the parties were fully in accord as to the terms of said contract, then your verdict should be for the defendant." Acting under these instructions, the jury returned a general verdict for the plaintiff.

Upon the question of the measure of damages in case the jury should find for the plaintiff, the court instructed the jury as follows: "8. If you find for the plaintiff in this case, the measure of plaintiff's recovery would be the profit that plaintiff would receive by reason of said purchase of said land. That is, the plaintiff would be entitled to receive as damages the market value of the land in question less the amount that he agreed to pay for said land. The market value of said land at said time must be determined by you from the evidence." The testimony of the witnesses on both sides placed the value of this land at that time at from $80 to $100 an acre. The lowest esti-

mate placed upon it by any one was that of defendant him-
self, who testified that it was worth and he could have sold
it for $80 an acre.   There was no evidence before the jury
which would warrant them in fixing a value upon the land
of less than $80 an acre; so that upon the undisputed evi-
dence, and taking the lowest valuation which the jury had
a right to consider, if they found for plaintiff, under the
instructions of the court they could not return a verdict
for less than $1,200.

It is evident, therefore, that the jury disregarded the
evidence and the instructions of the court and arbitrarily
undertook to adjust this case upon a basis of their own.
They were expressly told by the court that in determining
the amount of plaintiff's damages, in case they found for
plaintiff, the same "must be determined by you from the
evidence," an instruction which the jury clearly disre-
garded.   The law is well settled that it is the duty of a
jury to find a verdict according to the law as given in the
instructions of the court, and that when they clearly vio-
late this duty, the court should set aside the verdict.
*Standiford v. Green & Co.*, 54 Neb. 10; *Westinghouse Co.
v. Tilden*, 56 Neb. 129.

Plaintiff has assigned error on the part of the court in
a number of instructions given and refused, and urges that
those assignments should be passed upon for the future
guidance of the trial court.   We do not deem it necessary
to do so, for the reason that in the light of the views
herein expressed the trial court will have no difficulty in
instructing the jury upon another trial.   We are unable to
discover any theory upon which the verdict and judgment
in this case can be sustained.   The transaction, in its in-
ception, may have been an "executory" joke; but the
trouble is it later seems to have become "executed;" and
executed jokes ofttimes bear very real fruit.

The judgment of the district court is reversed and the
cause remanded for further proceedings in harmony with
this opinion.

REVERSED.

ROSE, J., dissents.