ANNA M. LONG, APPELLEE, V. RAILWAY MAIL ASSOCIATION, APPELLANT.

12 N. W. (2d) 113

FILED NOVEMBER 26, 1943. No. 31651.

*Rosewater, Mecham, Shackelford & Stoehr,* for appellant.

*Tunison & Joyner* and *Edward F. Leary, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, CHAPPELL and WENKE, JJ., and POLK and NUSS, District Judges.

WENKE, J.

This action was commenced in the district court for Douglas county by Anna M. Long, as plaintiff, against the Railway Mail Association, a corporation, as defendant, seeking to recover, as beneficiary, on a certificate of accident insurance issued by the defendant upon the life of her husband, Chester R. Long, for his death caused wholly and alone from sudden, violent and accidental injuries. From a verdict for the plaintiff and judgment entered thereon, including an allowance of attorneys' fee, the defendant has appealed.

For the purpose of this opinion the plaintiff will be referred to as the appellee and the defendant as the appellant.

The appellant contends that the trial court erred in overruling its motion for a directed verdict or dismissal made at the close of all the evidence as the verdict is wholly unsupported by the evidence. Therefore, the first question presented by this appeal is whether or not there is any evidence in the record sufficient to submit to the jury the question of the appellant's liability under the provisions of the policy that it issued to the deceased. In construing the evidence the court will follow the rule announced in *McNaught v. New York Life Ins. Co., ante,* p. 220, 12 N. W. (2d) 108: "This court, in reviewing such decision, will assume the existence of every material fact which the evidence on behalf of the plaintiff tends to establish, including the answers to the hypothetical questions by the doctors, and, in addition, give the plaintiff the benefit of the logical inferences therefrom. See *Zielinski v. Dolan,* 127 Neb. 153, 254 N. W. 695; *In re Estate of Skade,* 135 Neb. 712, 283 N. W. 851."

The evidence discloses that on March 28, 1918, Chester R. Long, the deceased, then being a mail clerk, obtained from the appellant association an accident insurance policy, No. 25843, which he kept in full force and effect at all times and which remained in force at the time of his death and that he named the appellee as beneficiary therein. Sometime in 1932 the deceased retired from his active duties and thereafter occupied his time in taking care of his yard and home, traveling, and in his hobbies of hunting and fishing, of which he was very fond. That on or about the 20th day of July, 1939, the deceased, with his friend William J. Frenking, went fishing on the Platte river near the latter's shack. In the afternoon of said day while wading in the river he received severe cuts and lacerations below his knees from barbed wire which was submerged in the river. He remained at the shack, although not doing any more fishing, until the next forenoon when he returned to his home. The scratches on his legs had become red and inflamed and Dr. Niehaus was called and he prescribed a treatment of epsom salts solution which Mrs. Long applied for three or four days, after which vaseline was used. The inflammation to a large extent receded and the legs became white and scars formed on the injured parts. Dr. Niehaus again called at the house on August 1st and on August 10th deceased called at the doctor's office at which time he discharged him from further treatment. During the first part of this time the deceased was confined to his home but later on was up and about the yard and attended to the other matters such as buying groceries, etc. On August 10th after returning from Dr. Niehaus' office he went to the grocery store to buy groceries and then during the afternoon at about 4 o'clock, while visiting with a friend, the deceased had a stroke affecting the left side of his body. Dr. Bliss was called, but in his absence Dr. Anderson came to the home and shortly thereafter Dr. Bliss arrived. The deceased was taken to the hospital where he lingered until August 15th when he died. An autopsy was performed on the body by Dr. Baker, in the presence of Dr. Bliss and Dr. Niehaus,

whose report is in evidence. At the time of his death the deceased was about 71 years of age and prior to the scratching of his legs while wading in the Platte river had enjoyed an active outdoor life for a man of his advanced years.

The jury returned the following verdict: "We, the jury duly impaneled and sworn in the above entitled cause, do find that Chester R. Long came to his death on the 15th of August, 1939, solely and entirely by reason of an accident whereby he received lacerations to his legs while fishing, and without in any manner having his death caused by reason of any diseased condition existing prior to the time of said accident."

The certificate and the appellant's constitution, which is a part thereof, contain the following provisions which are applicable:

The insurance certificate provides: "If the member * * * receive bodily injuries * * * through external, violent, and accidental means * * * ." And further: "If death shall result from such injuries alone * * * the Association will pay $4,000.00 * * * to Anna Long, his wife." Section 8 (d) of Article XVI of the constitution provides: "Accidental death and accidental injuries are defined to be either sudden, violent death, or accidental injuries, from violent and accidental means alone, resulting directly, independently and exclusively of all other causes * * * . There shall be no liability whatever unless death or disability results wholly from the injury, nor when any disease, defect or bodily infirmity is a contributing cause of death or injury * * * ."

The rule is well settled that policies of this character are to be construed liberally and ambiguous provisions or those capable of two constructions should be construed favorably to the insured and against the insurer. However, plain, explicit language cannot be disregarded nor an interpretation given the policy at variance with a clearly disclosed intent of the parties. Taking the policy herein involved, it admits of but one construction. It provides that the company insures against injury or death through external, violent, and accidental means which results directly, independently and

exclusively of all other causes and there shall be no liability whatever unless death or disability results wholly from the injury nor when any disease, defect, or bodily infirmity is a contributing cause of death or injury.

In the case of *Russell v. Glens Falls Indemnity Co.*, 134 Neb. 631, 279 N. W. 287, involving an accident policy with provisions in effect the same as the policy herein involved, we laid down the rule applicable there as follows: "If the results of the accident, added to the diseased condition of an insured, produced the ultimate total result, under policy having the phrase 'wholly or in part, directly or indirectly,' there could be no recovery. But the disease must be of such a substantial character as to cause or in a substantial way to cooperate with the results of the injury to produce the total disability. Of course, in a case where the disease of which an insured was disabled resulted from the accidental injury, the situation would be different; as also it would be if the insured had a disease and the accidental injury caused the disablement independently of the disease." It should be carefully observed, as stated in the foregoing opinion, that where the policy does not include the provision "There shall be no liability whatever unless death or disability results wholly from the injury, nor when any disease, defect, or bodily infirmity is a contributing cause of death or injury," or a like phrase, that a different rule applies as therein set forth but which has no application here.

The undisputed evidence shows that the deceased had an advanced case of diabetes, an extreme case of arteriosclerosis or hardening of the arteries from the heart and to the brain, had apparently had a previous partial or complete occlusion of the coronary artery, had a severe fibrous or scar tissue condition of the heart and the septum of the heart was in a necrotic condition. The death certificate signed by Dr. Bliss gives as the cause of the death "Cerebral Thrombosis, right Lenticulo Striate artery, with left hemiplegia. General arterio sclerosis. Coronary artery thrombosis. Diabetes Mellitus. Receding cellulitus both legs. Secondary to barb wire injury (recent)." All of the

medical witnesses of both appellee and appellant agree that it correctly reflects the causes from which Mr. Long died. Under the rule announced in *Russell v. Glens Falls Indemnity Co., supra,* the appellee would be precluded from recovery unless he came within one of the exceptions thereto. It appears without question that the insured did not die from any accidental injury independent of these diseases.

The question is, is there any evidence upon which a jury might base its verdict that the diseased condition from which the insured died resulted from the accidental injury?

Dr. F. W. Niehaus testified in part as follows: "Q. Now, what was the nature of this infection that you observed there on his legs? A. We did not make any smears or cultures, but it looked something like erysipelas; not erysipelas, but what we call erysipeloid, an infection probably due to streptococcus. * * * It was a streptococcus infection. Q. These streptococci that you refer to in these wounds, do they in any way affect the lining of an artery? A. Well, they could, yes. Q. You don't know whether it (streptococcus) did or did not (get into the blood stream)? A. I don't know. Q. You found no evidence of streptococcus in the areas occlusioned, did you? A. No. Q. The local infection would not have caused the death had there not have been an arteriosclerosis in the already occluded arteries? A. No, it would not. Q. The occlusion of the arteries was probably hastened by the diabetic condition that the man had, that predisposed him to arteriosclerosis, didn't it? A. Yes. Q. Now, coming back to this necrotic condition which the autopsy discloses in the brain and in the heart, to my understanding you say that the condition could develop within a period of five days? A. Yes, it could. Q. Now, we can say now that this man had a very advanced condition of arteriosclerosis in the arteries around the heart, the aorta, the coronary arteries, and also that artery in the brain, a very advanced case? A. That is right. Q. And that was a very important factor in causing his death? A. That is right." (Our insert.)

Dr. R. W. Bliss testified in part as follows: "Q. Any

scratch or wound on the limbs or legs or on the hands is dangerous because of the possibility of gangrene setting in, in a diabetic? A. Correct. Q. Much more dangerous than it would be in a person who is not diabetic, is that right? A. Yes. We do not like to see any infection in a diabetic. Q. Now, is it your idea that infection may have accelerated the laying down of deposits in the artery? A. Yes. Q. Atheromatous deposits, including the aorta? A. It might have been a factor. Q. So that the death was due to a combination of things, the progressive atherosclerosis and the effect of the infection? A. Correct. Q. If the man had not had established—(interrupted). A. And his diabetes. Q. The three factors then combined to cause his death? A. Yes. Q. Then, as I understand you, Doctor, in your opinion, based on the facts you have testified to here, in your opinion the infection from the barbed wire injuries caused the onset or change of this cerebral thrombosis and coronary thrombosis, is that right? A. Not exactly. I would not go so far as to say it caused. I would say it easily may have been a very definite factor in this process, in this infection. It may very easily have been, in my opinion, a factor to which I have testified."

Dr. Charles Baker testified in part as follows: "Q. What in your opinion, was the cause of his death? A. This man died of myocardial infarction or thrombosis of the cerebral vessels. Q. Do you have an opinion, Doctor, as to the invading general cause from these two things from which you say he died? A. Yes, I have an opinion, sir. Q. What is that? A. I am of the opinion that the cellulitis which this man had might have precipitated it. Q. This necrosis, which you described in the brain, and also in the coronary vessels, you stated, I believe, could develop slowly or rapidly, is that correct? A. That is true. * * * A. You mean atherosclerosis? Q. Yes. A. Yes, it may develop rapidly. Q. Then finally, Doctor, you say that microbes or toxins could come from the legs up through the veins to the heart and then to the lungs and back into the arteries, is that correct? A. It is possible. Q. How far would you go on

that, Doctor? If you say that this man had no arteriosclerosis at all, in that short space of time could that infection in between July 20th and August 15th, as the history as we have it here shows, with no temperature rise, no abnormal pulse rate and only in bed five days, do you think, with the evidence that you have there, the evidence of that infection and the seriousness of it, could have caused all this arteriosclerosis that you found there? A. No, I do not think it would cause that arteriosclerosis that I found there. Q. Do you think it caused that scarring that you say had come from a previous occlusion or partial occlusion? A. No. Q. It is quite evident from the condition you found in these arteries, extreme degree of atherosclerosis, that in the light of that history the atherosclerosis must have been far advanced before the man had the accident? A. Yes, I am of the opinion that he had far advanced atherosclerosis. Q. Then if the infection which you say may have been a factor was in fact the factor, it was only one of several factors causing the man's death, is that right? A. Well, the man had several things that caused his death. The part that the infection played in this at the time he died, I think, was minor, but previous to that the infection may have played its role previous to his death."

From an examination of the foregoing parts of these doctors' testimony and from a consideration of the testimony of the record as a whole, it is undisputed that the insured came to his death by a combination of causes. He had an advanced case of diabetes which made him more susceptible to infection and which hastens arteriosclerosis or hardening of the arteries; he had a severe case of arteriosclerosis which normally develops over a long period of time; he had fibrous scar tissue in the heart; he had had a previous complete or partial occlusion of the coronary artery; he had a necrotic condition of the heart, all of which, according to the testimony, had its part in causing his death and under the rule herein would preclude the appellee from recovering. To say that a jury might, from the evidence here set forth and the record as a whole say all of these conditions

resulted from and occurred after the accident on July 20, 1939, and the infection that developed therefrom, is to permit the jury to come to a verdict based solely on possibilities, conjectures, or speculation which we have said many times is not sufficient to sustain a verdict. *Peabody v. Continental Life Ins. Co.,* 128 Neb. 23, 257 N. W. 482; *Securities Investment Corporation v. Krejci,* 132 Neb. 146, 271 N. W. 287. For the reasons herein stated the motion of the appellant, made at the close of all the testimony, for a directed verdict or dismissal should have been sustained.

In view of the foregoing it is not necessary to discuss other assignments of error.

REVERSED AND DISMISSED.