ANNA M. LONG, APPELLEE, v. RAILWAY MAIL ASSOCIATION, APPELLANT.

17 N. W. 2d 675

FILED FEBRUARY 16, 1945. No. 31651.

*Rosewater, Mecham, Shackelford & Stoehr,* for appellant.

*George M. Tunison* and *Edward F. Leary, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is an action to recover death benefits on an accident insurance contract issued by the defendant to the deceased

husband of the plaintiff. From a verdict and judgment in favor of the plaintiff the defendant appeals.

The beneficiary certificate provides for the payment of disability benefits "If the member named in this Certificate shall receive bodily injuries during the continuance of this Certificate through external, violent and accidental means * * * which shall wholly and continuously disable him * * * ." It also provides that "If death shall result from such injuries alone * * * , the Association will pay $4,000 * * * to Anna M. Long, his wife." The certificate further provides that "The Certificate, the Charter, or Articles of Incorporation, the Constitution and Laws of this Association, * * * shall constitute a part of the Agreement * * * ." The constitution of the association provides in part: "Accidental death and accidental injuries are defined to be either sudden, violent death, or accidental injuries, from violent and accidental means alone, resulting directly, independently and exclusively of all other causes, and not the result of the member's own vicious, intemperate, or unlawful conduct, and producing visible marks of injury or violence on or within the body of the member. There shall be no liability whatever unless death or disability results wholly from the injury, nor when any disease, defect or bodily infirmity is a' contributing cause of death or injury, * * * ."

On or about July 20, 1939, the insured went fishing in the Platte river and while wading barefooted in the handling of his fishing lines, he became entangled in some barbed wire and sustained severe cuts and lacerations on both legs below the knees. Insured returned home the next morning and was ordered to bed by his physician. A streptococcus infection rapidly developed. After several days' treatment the infection appeared to subside and the wounds began to heal. On the morning of August 10, 1939, the insured was able to call at his physician's office for the first time after the accident. During the afternoon of the same day insured was stricken with coronary and cerebral thrombosis and died on August 15, 1939. The evidence shows that insured's arteries of the brain and heart were in an

advanced stage of arteriosclerosis and that he was diabetic. An autopsy disclosed that the main artery on the right side of the brain was occluded by a blood clot and the coronary arteries of the heart completely occluded in three places. Scars resulting from previous occlusions were evident.

Plaintiff contends that the insured died of an arterial occlusion resulting from streptococcus infection received through the barbed wire lacerations. The defendant contends that the death did not result wholly from the infection from the lacerations on the legs and that disease, defect, or bodily infirmity was a contributing cause within the meaning of the insuring provisions of the insurance contract. This was the issue the parties sought to have determined.

It is not questioned that the insured suffered an accident while fishing in the Platte river and that as a result thereof he suffered cuts and lacerations on his legs below the knees. It cannot be questioned that an infection developed which required medical attention and that it was apparently under control when insured was stricken with paralysis on August 10, 1939.

Neither is it disputed in the evidence that the insured had been afflicted with diabetes for several years prior to the accident and that persons afflicted with this disease are more susceptible to infection than persons in normal health. The evidence further shows that the insured immediately prior to his death was suffering from arteriosclerosis in an advanced stage, that he had suffered a cerebral thrombosis and a coronary occlusion, that evidences existed of previous coronary occlusions and a loss of heart muscle consistency in the walls of one section of the heart. A definite necrotic condition existed in sections of both the heart and brain of the insured. Leukocytes were found in the areas of· the brain, coronary arteries and legs of the insured at the points damaged as hereinbefore described. It is not disputed that the cuts and lacerations on the legs of the insured would not have resulted in his death except for the presence of the diseased conditions of insured's heart, brain

and arteries. Under such a situation, do the recited provisions of the insurance contract permit a recovery?

The factual question remaining, if any exists at all, is whether the infection of defendant's legs resulting from the cuts and lacerations could accelerate the existing diseased conditions and thereby bring about the death of the insured, and, if this be possible, whether such infection did in fact produce such a result? Before discussing this question it is necessary to determine whether the existing diseased conditions, admittedly present, of themselves preclude a recovery under the provisions of this policy.

While a contract of insurance should be construed and applied as written, any construction which would defeat the purposes of accident insurance must be avoided. Likewise, an interpretation which would have the effect of converting accident into life insurance would be just as destructive of the public good. A literal construction of the quoted language of the present insurance contract would almost without exception require a decision for the insurer for it is seldom, if ever, that one cause is solely responsible for death from a medical standpoint. There is and must be distinguishing features between legal and medical causes of death and the fact that an existing disease or condition may appear to have been the immediate cause of death in point of time does not necessarily mean that it was the primary proximate or precipitating cause within the meaning of the insurance contract. The question to be decided is, consequently, what was the cause of death from the legal standpoint; the cause which the parties contemplated when the insurance contract was entered into?

There is little doubt that the insured would not have died from the effects of the cuts and lacerations on his legs but for the existing diseased condition of his brain, heart and coronary arteries. All of the expert medical testimony is to that effect. Before the accident he had the general appearance of a healthy man of his age, did the things which a healthy man would do and apparently had no knowledge of any physical disability other than his diabetic condition,

although a careful physical examination would probably have revealed it. He had carried the insurance since 1918 and the insurer had accepted the premiums, knowing that he was reaching an age when in the normal course of events arteriosclerosis and other disabilities usual to age would be expected to develop. Certainly, it was not within the contemplation of the contracting parties that the mere existence of disease or conditions which often develop in men of his age should invalidate the terms of the contract. We quite agree that if the evidence is conclusive that the existing disease or condition was the sole cause of death, or that the purported accident was the result of the existing disease or condition, no recovery can be had. If the disease or condition grows out of the accident and results in death or disability to the insured, liability exists because the accident and not the disease or condition is the precipitating and motivating cause of the death. But where, as here, it is difficult to determine whether the accident or pre-existing disease or condition was the motivating or precipitating cause of death, it necessarily becomes a question of fact for a jury. We are obliged to say therefore that the existence of disease or conditions incompatible with good health do not of themselves defeat a recovery under the language of the contract before us.

It must be conceded at the outset that the insurance company produced the evidence of medical experts which, if believed, would sustain a finding of nonliability. Testimony was adduced to the effect that infections have nothing to do with arteriosclerosis or the development of arterial thrombosis or coronary occlusions. Of course, if this evidence was undisputed, or believed by the jury in case of conflict, the insurer would be entitled to judgment.

The record shows, however, that members of the medical profession as well as the text writers on the subject, are not in agreement that infections can play no part in the progressive development of such existing diseases and conditions. One of the insurer's expert witnesses concedes this difference of opinion and authority. Dr. R. W. Bliss

testified that but for the infection of the legs, the demise of the insured would not have occurred when it did. The effect of his testimony is that the infection accelerated the arteriosclerosis and the resulting thrombosis and occlusion. Dr. F. W. Niehaus also testified that infection could accelerate the progress of arteriosclerosis and the coronary conditions resulting in a coronary occlusion. The expert evidence on this question is clearly in conflict and, paradoxical as it may seem, it becomes a question for the jury to decide.

The insurance company contends that the evidence is insufficient to sustain a finding for the plaintiff because there is a want of evidence to show that the injury to the legs of the insured and the infection resulting therefrom actually caused the death of the insured within the hereinbefore cited provisions of the policy. A discussion of this question requires a review of the evidence adduced on that point.

In this connection, Dr. Niehaus testified: "Well, this man had hardening of the arteries and undoubtedly hastened by his diabetes; and he had an infection of his legs, and clots were formed in the coronary arteries, and I am sure that this formation of these clots were very definitely hastened by the presence of this infection. * * * Infection would increase the cardiac output; would increase the load on the heart, and we would certainly not subject those patients to infection if there was any way out of it. * * * In my opinion, the infection of his legs was the precipitating (cause) of the thrombosis of the coronary arteries and cerebral vessels." In addition to the foregoing Dr. Niehaus testified that the insured suffered a streptococcus infection in his legs following his accident in the river and that the infection invaded the blood stream.

Dr. Bliss testified in part as follows: "But infection in any part of the body, in any man, particularly if that man is diabetic and if he has arteriosclerosis, if his vessels are not good, any infection would so lower the resistance as to increase the severity of any diabetic type, and this in turn increases very definitely the atheromatous process in the

vessels, in the vessels of the brain or anywhere. * * * I would say it easily may have been a very definite factor in this process, in this infection. It may very easily have been, in my opinion, a factor to which I have testified. * * * It is my opinion that his infection - - - it is highly probable that if this man had not been hurt, had not been scratched, had not had a secondary infection, that even although he had diabetes, even though he was arterially sclerotic, it is my opinion, it is highly probable that his death would not have occurred at the time it did, but for that infection; that is my feeling."

Dr. Charles Baker testified in part as follows: "Well, it is my opinion that had this accident not have occurred, he might have lived longer. * * * Ordinarily infections increase the load on the heart. * * * Inflammation, in my opinion, can speed up atherosclerosis. * * * Well, the man had several things that caused his death. The part that the infection played in this at the time he died, I think, was minor, but previous to that the infection may have played its role previous to his death."

We think this evidence is sufficient to go to the jury on the question whether the insured's death was caused by the accident within the meaning of the insurance contract. Certainly, the positive evidence of Dr. Niehaus that the infection arising as a result of the accident was the precipitating cause of death, generally though not positively supported by the testimony of Drs. Bliss and Baker, raises a fact question which the jury, and not this court, must determine.

We do not think that the expert evidence, to the effect that the death of the insured would not have occurred at the time it did but for the infection resulting from the accident, is a controlling factor, although it seems to be in some jurisdictions. See *Fidelity & Casualty Co. v. Meyer,* 106 Ark. 91, 152 S. W. 995; *Benefit Assn. of Ry. Employees v. Armbruster,* 224 Ala. 302, 140 So. 356. The accident must be the active, efficient cause which sets in motion the agencies that result in death without the intervention of

any other independent force in order to be regarded as sole cause of death within the meaning of the insurance contract. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such cases existing disease and conditions do not rise to the dignity of concurring causes, but are more accurately defined as the passive allies of the agencies set in motion by the accidental injury. *Driskell v. United States Health & Accident Ins. Co.,* 117 Mo. App. 362, 93 S. W. 880; *Equitable Life Assurance Society v. Gratiot,* 45 Wyo. 1, 14 Pac. 2d 438; *Wheeler v. Fidelity & Casualty Co.,* 298 Mo. 619, 251 S. W. 924; *Wolfangel v. Prudential Ins. Co.,* 209 Minn. 439, 296 N. W. 576.

In *Continental Casualty Co. v. Lloyd,* 165 Ind. 52, 73 N. E. 824, appears this pertinent language: "It (the jury) had the right to find that the accidental fall was the cause that put his life in jeopardy, because it incited the fatal energy of the tumor, which was at least dormant, and would have remained so for an indefinite period, and, perhaps, until death from some other cause would have supervened. The tumor had impaired the resisting strength of the artery, but had not effected immediate danger to life. It was proper under the evidence for the jury to view the impairment as a condition, and not as a cause, and to find that the fall was the originating, efficient, direct and proximate cause of death; that is, that the fall set in motion a force that progressed upon present existing conditions in natural, usual sequence to effect the fatal result. * * * Who knows that the artery would not have been ruptured by the fall if it had been in a normal condition? Or who can tell that the insured would not have died from some other cause if the fall had not animated and accelerated the energy of the tumor. * * * From these considerations it seems clear that the jury, in its search for the proximate cause of death, had the right to conclude that even though the fall would not have produced death but for the impaired artery, the tumor at most was a remote, and not a proximate, efficient

cause." See, also, *Prudential Ins. Co. of America v. Carlson,* 126 Fed. 2d 607; *Railway Mail Assn. v. Schrader,* 107 Ind. App. 235, 19 N. E. 2d 887.

The evidence produced by the plaintiff is to the effect that the diabetic condition did not contribute to the insured's death in any way other than that it made his system more suspectible to infection. The sclerotic condition of the arteries leading to the brain and those supplying the muscles of the heart were not diseases or infirmities in the ordinary speech of man,—they were conditions more or less common to aging persons which weaken resistance and cause such persons to be more susceptible to injury. They ordinarily do not evidence impending death, in fact the person involved is usually totally oblivious of their existence. They are ordinarily more or less dormant and often incapable of becoming seriously harmful except through the intervention of some other causative force. There is evidence that such was the case in the cause at bar. In *Silverstein v. Metropolitan Life Ins. Co.,* 254 N. Y. 81, 171 N. E. 914, the court aptly said: "The infinite interplay of causes makes it impossible to segregate any single cause as operative at any time and place to the exclusion of all others, if cause is to be viewed as a concept of science or philosophy * * * . The courts have set their faces against a view so doctrinaire, an estimate of intention so headed toward futility. 'We are to follow the chain of causation so far, and so far only, as the parties meant that we should follow it. "The causes within their contemplation are the only causes that concern us." ' "

We cannot overlook the difference between the motivating, precipitating and efficient cause on the one hand and a condition or remote cause on the other, as recognized in law. The cause of death from a medical standpoint is not necessarily a motivating, precipitating or efficient cause from a legal standpoint. Where the evidence thereon is in conflict, the question is for the jury. *Continental Casualty Co. v. Lloyd, supra; Western Travelers' Accident Assn. v. Munson,* 73 Neb. 858, 103 N. W. 688; *Sweeney v. Midwest*

*Life Ins. Co.*, 129 Neb. 521, 262 N. W. 47. These matters are proper subjects of medical opinion. *United States Casualty Co. v. Thrush*, 21 Ohio App. 129, 152 N. E. 796. An examination of the latter opinion will show facts very similar to the one at bar, which were submitted to the jury largely on the conflicting testimony of medical experts.

The opinion of a medical expert as to a cause of death is admissible on the theory that the subject matter is not one of common knowledge or experience and that such expert, by training and experience, is better acquainted therewith and more competent to reach an intelligent conclusion. *Horst v. Lewis*, 71 Neb. 370, 103 N. W. 460; *City of South Omaha v. Sutliffe*, 72 Neb. 746, 101 N. W. 997. Where such an opinion is based upon facts supported by the evidence, it is sufficient to take the case to the jury. *McNaught v. New York Life Ins. Co.*, 143 Neb. 220, 12 N. W. 2d 108. While it is true that the medical experts do not agree on the cause of death, it is for the jury and not the court to determine from all the evidence, including that of the experts, under proper instructions, whether the accident was the cause of death within the meaning of the policy. *Lickleider v. Iowa State Traveling Men's Assn.*, 184 Ia. 423, 166 N. W. 363.

We think our former decisions generally support the views herein expressed. In *Modern Woodmen Accident Assn. v. Shryock*, 54 Neb. 250, 74 N. W. 607, we said: "Whether the injury in this case was the proximate cause of the death of Mr. Shryock was purely a question of fact, for it involved the determination upon evidence of the relations between alleged causes and effects and nothing more. It cannot be said that the evidence was so clearly in support of one theory that no reasonable man, fairly exercising his judgment, could have refused his assent thereto." This correctly states the rule if the term "proximate cause" is treated as the legal cause and not the medical or scientific cause in accordance with the discussion we have heretofore had on those questions.

In *Ward v. Aetna Life Ins. Co.*, 82 Neb. 499, 118 N. W.

70, we said: "Great stress is placed by defendant upon the use of the word 'solely'; and it is urged that the effect of its use is to preclude a recovery if any other disorder manifests itself and causes or contributes to the cause of death. If the word 'solely' is left out of the sentence, the logical meaning of the clause is not changed. It is still required that death should result from the injury, and this excludes the idea of other independent or cooperating causes. Starting with a bodily injury all morbid changes in the exercise of vital functions or the texture of the bodily organs which result from or are induced by such injury should be regarded as the effect thereof, and not as independent causes. When death results from any such morbid change so resulting from or induced by such injury, the injury, and not the morbid change induced by it, is the cause of death. Beginning with a primary cause, conditions induced by such cause are effects thereof, and every condition so induced must be considered in relation therteo as an effect, and not as a cause."

In *Moon v. Order of United Commercial Travelers*, 96 Neb. 65, 146 N. W. 1037, we said: "It is also contended by the defendant that the death was in consequence of disease, and that it was caused wholly or in part by bodily infirmity, and that the injury received was not the proximate, sole and only cause of the death. This would seem to bring us to the question whether the beneficiary of an elderly person who dies because of the injury received through an accident can recover anything if the organs of the body are affected by the age of the assured. When the membership is created it must be known that the member will grow old if he lives, and that the organs of his body, including the heart, lungs and kidneys, are likely to be affected in time, and that the assured will be unable to resist in his old age the force of an accident which he might have successfully resisted at an earlier period. * * * For anything that appears in the evidence, the deceased might have lived many years but for the accident. We are of the opinion that the fall was the proximate cause of his death, and that the in-

jury sustained is within the conditions of membership as set out in the certificate."

We think the correct rule is: An accident insurance policy, providing for the payment of stipulated sums for accidental injury or death of the assured, where such injury or death is "from violent and accidental means alone, resulting directly, independently and exclusively of all other causes" and also providing that "There shall be no liability whatever unless death or disability results wholly from the injury, nor when any disease, defect or bodily infirmity is a contributing cause of death or injury," means that recovery may be had when the accident is the active, efficient and precipitating cause which set in motion the agencies which resulted in the injury or death without the intervention of any other independent force, even though existing infirmities of the insured may be necessary conditions to the result. When the cause of death involves the determination upon conflicting evidence of the relations between alleged causes and effects, it becomes a question of fact for a jury.

The defendant asserts that instructions two and three given by the court were erroneous. We think they were. The court in these instructions told the jury that "If further, prior physical conditions or disease with which he was afflicted in any manner contributed to the sum total of the causes that led to his death" and "The burden of establishing that the death was caused solely and entirely without the help of other prior causes by the accident itself, without in any manner hastened by other prior diseased conditions" was on the plaintiff. The quoted portions of these instructions do not correctly state the rule when the language used is given its ordinary and usual meaning. Of course, a parallel, concurrent cause contributing to death or injury which is disconnected from the injury sustained by accident will prevent recovery under the policy in suit. But the fact that a disease or condition may contribute to death or injury from the medical standpoint will not exclude recovery where the accident was the moving, exciting or precipitating cause. Legally, the latter is the cause of

the death or injury, the former being a passive ally of the latter in bringing about the final result. The instructions are erroneous in not clearly stating these distinctions to the jury.

The evidence will not support a verdict for the plaintiff under the instructions given. All of the evidence adduced as to the cause of death is to the effect that death would not have resulted from the accident but for the infirmities with which the insured was afflicted at the time the accident occurred. The instructions were to the effect that if such was found to be the fact no recovery could be had. Clearly, the verdict is contrary to the evidence when viewed in the light of the instructions given by the court. There being no evidence to sustain the verdict under the instructions given, it must be presumed that the verdict was the result of passion and prejudice. This has the effect of vitiating the verdict in its entirety and requires a new trial of the case under proper instructions. *Hawe v. Higgins*, 89 Neb. 575, 131 N. W. 937.

The present case seems to have been submitted to the jury largely on the rules announced in *Russell v. Glens Falls Indemnity Co.*, 134 Neb. 631, 279 N. W. 287. We do not think this case accurately announces the applicable rule. The opinion in that case fails to distinguish between an existing disease which is independent and co-operative in bringing about the death or disability and with a disease or infirmity which is activated and precipitated by the accident itself, even though without such existing infirmity or disease the death or disability would not have occurred. To the extent that it conflicts with this opinion on that point, the opinion in the *Russell* case is disapproved.

We conclude that the verdict and judgment must be set aside because of errors in the instructions. While the instructions were more favorable to the defendant than defendant was entitled to, the evidence will not support the verdict on the theory on which it was submitted. The judgment is therefore reversed and the cause remanded for a new trial in accordance with the rules announced herein.

Our former opinion in this case, appearing in 143 Neb. 949, 12 N. W. 2d 113, is vacated and set aside.

REVERSED.

WENKE, J., dissenting.

I disagree with the opinion now adopted by the majority of the court for reasons sufficiently stated in the original opinion, reported in 143 Neb. 949, 12 N. W. 2d 113, and for the following additional reason:

In her petition appellee alleged that, "The death of said Chester R. Long resulted wholly and alone from the sudden, violent and accidental injuries aforesaid and directly and independently of all other causes resulted in his death."

In accordance therewith the trial court instructed as follows:

"Before the plaintiff can recover in this suit, she must establish by a preponderance of the evidence relating thereto that Mr. Long's death was occasioned and brought about by the barbed wire lacerations referred to and by physical changes that came to Mr. Long's body solely from the barbed wire lacerations and those alone."

"The burden of establishing that the death was caused solely and entirely without the help of other prior causes by the accident itself, without in any manner hastened by other prior diseased conditions, by a preponderance of the evidence relating thereto, is on the plaintiff."

The majority opinion states: "The evidence will not support a verdict for the plaintiff under the instructions given."

In this situation the rule announced in *Bohmont v. Moore*, 141 Neb. 91, 2 N. W. 2d 599, is applicable and the parties are bound thereby. This rule is stated as follows: " * * * where a certain theory on any issue is relied upon by the parties to the trial as the proper one, it will be adhered to on appeal whether it is correct or not. *Behle v. Loup River Public Power District*, 138 Neb. 566, 293 N. W. 413; *U. S. Tire Dealers Mutual Corporation v. Laune*, 139 Neb. 26, 296 N. W. 333."

MESSMORE, J., concurs in this dissent.