M. MARJORIE BOBBITT, APPELLANT, V. THE ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, APPELLEE.

142 N. W. 2d 351

Filed May 6, 1966. No. 36232.

Gaines, Spittler, Neely, Otis & Moore, for appellant.

Schmid, Ford, Snow, Green & Mooney, for appellee.

Heard before Carter, Spencer, Boslaugh, Brower, and McCown, JJ., and Ronin, District Judge.

Spencer, J.

This is an action brought by M. Marjorie Bobbitt, hereinafter referred to as plaintiff, a surviving widow and the beneficiary in an insurance certificate issued to James Carroll Bobbitt in 1956 by The Order of United Commercial Travelers of America, a fraternal beneficiary society, hereinafter referred to as defendant.

The certificate provided benefits for death due to accidental means alone and independent of all other causes in the amount of $5,000. The application signed by the deceased provided that he accepted any certificate issued on the application: "* * * subject to all the provisions of the Constitution and By-Laws of said Order as they now exist, or as they may hereafter be amended, and agree on behalf of myself and my beneficiaries that benefits to be paid shall be those only which may be provided for in the Constitution and By-Laws of the Order in force and effect at the time any accident occurs."

The certificate itself provides such member: "* * * is entitled to all the rights and benefits which may be provided for such 'Class A' Insured Members in and by the Constitution of said Order in force and effect *at the time any accident occurs.*" (Italics supplied.) The certificate also makes the application for insurance, a copy of which is attached to the certificate, a part of the contract.

The parties specifically agreed that the issue involved herein could be presented to the court as a matter of law on the documentary evidence and a stipulation of the parties. This was to be done by a motion for a summary judgment, notwithstanding the fact that a motion for summary judgment had earlier been presented to the court on the documentary evidence. The trial court, on the theory presented by the parties, sus-

tained the motion for summary judgment, and the plaintiff is now trying to shift position and to urge that where there is a genuine issue of material fact it is error to render a summary judgment. See Vackiner v. Mutual of Omaha, 179 Neb. 300, 137 N. W. 2d 859.

The trial court questioned plaintiff's counsel on handling the matter as a summary judgment, and there can be no doubt but that the plaintiff desired to proceed on that basis. As we view the issue here presented, we agree with the trial court there was no issue of material fact involved in the decision, and the procedure used was proper. It was not a question as to the evidence being in conflict but as to whether, assuming an accident, it is within the terms of the contract which is a question of law, in which instance summary judgment is proper.

For the purpose of a decision herein, we accept the plaintiff's contention that the deceased died as the result of an accidental fall in his bathtub which resulted in a subarachnoid hemorrhage. The plaintiff, in answer to a request for admission, stated: "* * * the proximate cause of the death of James C. Bobbitt was the blow received on his head when he slipped and fell in the bath tub on June 21, 1963, which blow caused an aneurysm of an internal carotid artery to rupture and thus produce a massive subarachnoid hemorrhage." In addition to plaintiff's admission, it is established without contradiction by the coroner's report as well as the testimony of two doctors by deposition in evidence that death was due to a massive intracranial hemorrhage. We assume, therefore, that the intracranial hemorrhage which caused insured's death was caused by the accident alone and independent of all other causes.

The problem arises because of an amendment to defendant's constitution, which became effective September 1, 1962, and was in full force and effect at the time of insured's death. This provision, so far as material herein, reads as follows: "Nor shall the Order be liable to

any person for any benefits for death, * * * by reason of any of the following conditions, *whether caused by accidental means or not,* to-wit: * * * any intracranial hemorrhage, cerebral thrombosis, and taking (voluntarily or involuntarily) of any poison." (Emphasis supplied.)

This constitutional provision was adopted subsequent to the issuance of the insurance certificate but prior to the accident. Although the application specifically provides that the contract is subject to all subsequent constitutional amendments, the plaintiff urges that the provision is contrary to public policy.

Plaintiff argues: "It is horn-book law that neither a fraternal organization nor any other type of insurance company, by an amendment of its constitution or by-laws, deprive an insured or his beneficiary of rights accruing under an original agreement. Certainly, the United Commercial Travelers cannot take away from Marjorie Bobbitt, beneficiary under the 1956 insurance certificate, benefits to which she was entitled under that contract." The difficulty with plaintiff's position is that the contract at its inception specifically provided this right as a provision of the contract.

If a violation of public policy exists, it must be in the nature of the exception itself and not in the fact it is embraced in a subsequent constitutional amendment. It certainly cannot be maintained that the inclusion of the provision making the contract subject to subsequent constitutional amendments is in itself contrary to public policy, because our statute, section 44-1035, R. R. S. 1943, specifically provides, so far as material herein: "Any changes, additions or amendments to said charter or articles of incorporation, or articles of association, if a voluntary association, constitution or laws, duly made or enacted subsequent to the issuance of the benefit certificate, shall bind the member and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amend-

ments had been made prior to and were in force at the time of the application for membership."

Every contract is made with reference to and subject to existing law, and every law affecting such contract is read into and becomes a part of the same. Turpin v. Standard Reliance Ins. Co., 169 Neb. 233, 99 N. W. 2d 26.

Plaintiff argues that when uncertainty exists as to the meaning of an insurance contract and it is illegal and against public policy of the state, the agreement will not be enforced as made. The difficulties with plaintiff's argument are the premises that the meaning of the contract is uncertain and that it is illegal and against public policy. We see no uncertainty or ambiguity. The language of the application and certificate is intelligible and free from doubt. The constitutional provision incorporated into the contract provides that death caused by any intracranial hemorrhage is not covered by the contract even though produced by an accident. It, therefore, would make no difference whether or not the intracranial hemorrhage is the result of trauma, as the exclusion is absolute and there is no coverage if the death is due to an intracranial hemorrhage.

If, as suggested above, the contract is against public policy, it must be on the basis that the inclusion of such provision so limits the contract that it constitutes a fraud on the public. This premise is untenable in this situation. The contract is a very limited one. The undisputed medical testimony, in the record by deposition, is to the effect that subarachnoid hemorrhages in this area are fairly common, and that the general consensus is that when one does occur, in practically all instances it is a spontaneous hemorrhage and not the result of an accident. This would constitute a very good reason why a limited accident policy would include such exclusion. While it is immaterial, because of the assumption we have made herein, it is of interest to note that the pathologist who performed the autopsy was of the opinion that the death could not have been accidental. We con-

clude that the exclusionary proviso in this instance does not violate public policy.

Plaintiff argues that fraternal orders for years have sought to decrease their obligations to policyholders by the use of inhibitory provisos in their insuring agreements. This may be true, and while the contract will be strictly construed against the fraternal order, we cannot make a new agreement for the parties.

Plaintiff takes comfort from the case of Moon v. Order of United Commercial Travelers, 96 Neb. 65, 146 N. W. 1037, 52 L. R. A. N. S. 1203, Ann. Cas. 1916B 222, which involved this same defendant. The constitution involved in that case required the accident to be the proximate, sole, and only cause of the injury, and excluded deaths resulting wholly or in part from bodily infirmity or disease. Moon had a variety of physical infirmities, including a heart difficulty, at the time of the accident. This court held that a jury question was presented as to whether death was due to the accident or to the heart condition, and affirmed a judgment for the plaintiff.

In Long v. Railway Mail Assn., 145 Neb. 623, 17 N. W. 2d 675, a constitutional provision provided: " 'There shall be no liability whatever unless death or disability results wholly from the injury, nor when any disease, defect or bodily infirmity is a contributing cause of death or injury, * * *.' "

In that case, we held: "If a disease, while existing, be but a condition and an accident the active, efficient and precipitating cause, the accident will be deemed the cause of death within the meaning of the policy and the agencies set in motion by the accident will be treated as effects or passive allies of the accident in bringing about the death," and a jury question was presented to determine whether the heart condition was but a condition.

We do not have an analogous situation in the instant case. The plaintiff concedes, and all of the evidence sustains, the fact that death was caused by an intracranial

hemorrhage. Plaintiff insists, and we assume that an accident caused the hemorrhage, so no fact question is presented. The sole issue presented is whether coverage is provided by the policy where an accident produces an intracranial hemorrhage which causes the death. This is solely a question of law. The trial court held accidental death from an intracranial hemorrhage is specifically excluded from coverage, and we sustain that conclusion. To hold otherwise is to ignore section 44-1035, R. R. S. 1943; to read the exclusionary proviso out of the policy; and to make a new contract for the parties.

We affirm the judgment of the trial court.

AFFIRMED.