RALPH RUSSELL, APPELLEE, V. GLENS FALLS INDEMNITY
COMPANY, APPELLANT.
279 N. W. 287

FILED APRIL 26, 1938.   No. 30146.

*Kennedy, Holland, De Lacy & Svoboda,* for appellant.

*Johnsen, Gross & Crawford, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

This is an action by Ralph Russell against the Glens Falls Indemnity Company on an accident insurance policy. The plaintiff claims he was wholly and continuously disabled for 15½ weeks from August 29, 1935, by an accident, while using a telephone, which prohibited him from performing any and every kind of duty pertaining to his occupation. The policy provides in part as follows:

"Does hereby insure Ralph Russell * * * by occupation a president—Russell Sporting Goods Company—against loss resulting from bodily injuries, effected directly and independently of all other causes, through accidental means. * * * Total loss of time. Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to his occupation, the company will pay the weekly indemnity. * * * This insurance shall not cover * * * disability * * * caused directly or indirectly, wholly or partly, by bodily or mental infirmity * * * or by any other kind of disease."

Plaintiff claims that on August 29, 1935, while he was

talking over long-distance telephone, he received a severe electric shock which resulted in total deafness and resultant injury to his nervous system, thus causing him to become totally and continuously disabled from August 29, 1935, until December 16, 1935; that he is entitled to a weekly indemnity of $50 a week, or a total of $775. There was no claim for partial disability, which was also covered by the policy.

The defendant by answer admits the issuance of the policy, and alleges that the plaintiff in his application answered the questions as to his physical condition falsely, and that, although plaintiff answered the question as to his hearing being impaired in the negative, the defendant alleges the fact to be that the plaintiff was completely deaf in one ear and that his hearing was diminished in the other, and that the entirely deaf ear was not affected by the shock received; that the deafness of the plaintiff in one ear was unknown to the defendant; that the deafness materially affected the hazard, and the plaintiff fraudulently procured the policy of insurance by concealment of said fact; that if the defendant had known the true facts it would not have issued said policy. Defendant further answers by showing a tender of the premium paid by the plaintiff to the date of the accident and an election to rescind the policy from its date of issuance. Defendant denies that the plaintiff was totally disabled within the meaning of the policy, and that the plaintiff received an accident which directly and independently of all other causes produced total disability, and alleges that the condition of the plaintiff's ear and his deafness, if any, was the result of a diseased condition which plaintiff had had for a number of years prior to the alleged accident.

Plaintiff replies by denying allegations of the answer not admitted, and alleges that he had no knowledge of the questions and answers referred to in the answer as to his hearing, and alleges he was not asked the questions by the agent of the company; that the answers were not made by him but were filled in by the agent at a time and place

when the plaintiff was not present. Plaintiff further denies that he was completely deaf in one ear, and alleges that he had useful hearing in both ears at the time of making the application and at the time of the alleged accident.

The cause was submitted to a jury, which found in favor of the plaintiff for the full amount claimed.

Appellant sets out many assignments of error, but the principal ones relied on are: That the plaintiff cannot recover because of the fraudulent misstatements in his application for insurance; that the plaintiff's condition was such as did not wholly and continuously disable him from performing any and all kinds of duties pertaining to his occupation; that the accident did not, independently and exclusively of all other causes, cause the disablement of the plaintiff; that there was error in giving and refusing certain instructions.

The evidence of the plaintiff was principally that of his associates and friends, who stated that in their dealings with him he had a fairly useful hearing. The plaintiff himself stated that he had normal hearing in his right ear, but had deficient hearing in the left ear before the accident. Dr. Kully testified in behalf of the plaintiff that many people, especially in advanced years, have catarrhal trouble in the ear, but that catarrhal trouble and resultant deafness were never alone of sufficient severity to cause the need of hearing aids; that it was his opinion the injury to the nerve and the concussion which caused the total deafness in the right ear; that plaintiff had a useful hearing before the accident. Dr. Callfas was a witness for defendant. He had examined the plaintiff several times in years previous to the accident and had charts made at the time of some of these examinations. Dr. Callfas stated that the plaintiff had at all times previous to the accident quite defective hearing in his ears, especially the left ear; also, he had examined the plaintiff soon after the accident. Other medical witnesses for defendant stated that the plaintiff's total deafness after the accident was contributed to by the previous diseased condition of his ears. We think a fair con-

clusion from the evidence is that there was considerable defect in hearing of the plaintiff's left ear previous to the accident, and that the hearing in the right ear was probably somewhat less than normal, but he had a fairly useful hearing. It would serve no useful purpose to analyze all the evidence. Our study of the evidence convinces us that the plaintiff was for all intents and purposes disabled for the period claimed in the petition.

The trial court fairly submitted the question to the jury as to whether or not the agent for the defendant, without the applicant's knowledge and without the applicant ever having made any statement in connection with the questions alleged to have been fraudulently answered by the plaintiff, answered the questions and placed the answers in the application. It is the settled law of this state that, where an agent of an insurance company takes an application for a policy and assumes responsibility by answering the questions presented in such application, without the applicant having made any statements in connection therewith, or knowing the manner in which they are answered, the company is not permitted to rely on the representations being false. *Scott v. New England Mutual Life Ins. Co.,* 128 Neb. 867, 260 N. W. 377; *Home Fire Ins. Co. v. Fallon,* 45 Neb. 554, 63 N. W. 860; *German Ins. Co. v. Frederick,* 57 Neb. 538, 77 N. W. 1106; *Roth v. Employers Fire Ins. Co.,* 123 Neb. 300, 242 N. W. 612. The jury correctly found this issue against the defendant.

Was the plaintiff wholly and continuously disabled from performing any and all kinds of duties pertaining to his occupation for the period of 15½ weeks? At the date of the accident the plaintiff was 63 years of age and in seemingly good health. He was the managing head of a large retail business in Omaha, Nebraska. Before the accident he was at his desk every day handling the details and assuming the responsibility of his large company, together with the burdens of financing and handling the various problems and incidents in connection therewith. Every day his duties made it necessary for him to have many conversations

over the telephone and directly with different individuals. This was shown by the testimony of his associates. That the accident occurred is not disputed. The same line of testimony showed that after the accident the plaintiff for the time in question was unable to carry on conversations and was nervous and irritable. There are a few incidents indicating that plaintiff might have been able to transact some of his former duties during the period of claimed disability. This court in the well-reasoned case of *Mc-Cleneghan v. London Guarantee & Accident Co.*, 132 Neb. 131, 271 N. W. 276, states a just and equitable rule as the law of this state. Under this rule the trial court properly instructed the jury as to determining whether or not the defendant was totally disabled within the meaning of the policy. While the court's instruction might have been improved by stating that the disability must be such as to prevent *the* substantial and material acts of the plaintiff's business, instead of indicating only "substantial and material acts," but, since the case is reversed, if there is any error in this instruction, it can be given further attention if this question arises later.

The defendant earnestly contends that the total disability is not wholly the result of the accident, but results from the accident cooperating with existing disease or infirmity, and that a claim based on such disability is not within the terms of the policy, especially where the resulting total deafness would not have been produced but for such existing bodily defect or infirmity. This brings us to a question in the case that is more perplexing and for its solution requires painstaking study of the evidence, the law, and the instructions given by the court. Did the trial court properly submit the question to the jury as to whether or not a disease of the insured existing at the time of the accident cooperated with the results of the accident to produce the total disability?

In instruction No. 4 the court instructed the jury, in so far as material to this question, as follows: "The burden is upon the plaintiff to establish by a preponderance of the

evidence the following propositions: (1) That on or about August 29, 1935, the plaintiff had an electric shock over the telephone under the conditions as described in the petition as instruction No. 1; (2) that as a result of such electric shock the plaintiff became totally deaf and received an injury to his nervous system; (3) that such injury and deafness was caused solely from such claimed accidental means directly, independently and exclusively of all other causes."

In instruction No. 5 the jury were told that, if the plaintiff knowingly and falsely signed the application as to his hearing, he could not recover.

Instruction No. 7 given by the court is as follows: "If you find for the plaintiff on instruction No. 5, and you further find that the plaintiff was partly deaf before the claimed accident was received by him; that he suffered an electrical shock at the time and place claimed and as a result thereof became totally deaf, and you further find that he was during the 15½ weeks after receiving such electrical shock totally incapacitated from performing any and every kind of duty pertaining to his occupation, then the fact that the shock aggravated a prior condition, if such you find, would not defeat the plaintiff's recovery unless you further find that during the period of 15½ weeks for which the plaintiff is attempting to recover, any disabling condition of deafness because of such claimed accident was due partly to the progressive character of disease, the progress of the disease manifesting itself after such claimed accident, and thereafter such progressive character of disease either directly or indirectly contributed toward such claimed total disability, then in the latter event, the plaintiff would not be entitled to recover, the policy excluding any liability for disability by any kind of disease, and in this case, if you find for plaintiff on instruction No. 5, the accidental injury independently and exclusively of all other causes arising after such accident must be the disabling factor."

Defendant requested the following instruction: "You are instructed that the plaintiff in his petition alleges that

the accident in question resulted in total deafness causing total disability during the period sued on. Now you are instructed that if you believe that the deafness which the plaintiff was suffering after the accident was caused both by the accident and the diseased condition of plaintiff's ears, and that the diseased condition of plaintiff's ears at the time of the accident directly and indirectly, or wholly or partly, caused such total disability, as claimed by plaintiff then your verdict should be for the defendant." Also, defendant requested two other instructions setting out in different form the same proposition as in its requested instruction above.

The decisions on the question above set out in other jurisdictions are not uniform and are inharmonious and in conflict, and we find by examination of the many cases cited in the briefs that any attempted reconciliation of them is hopeless and would result in absurd distinctions. In this state there is not a clearly defined rule under the previous decisions of this court. One source of confusion in the decisions on this question in different courts, even in the same jurisdiction, is in applying the reasoning and law of one case, based on a certain insurance contract providing for benefits resulting from accident, to another case with a different contract. Many of the cases are where contracts involve only the provision "resulting directly, independently, and exclusively," while others have the additional phrase "wholly or in part, directly or indirectly, from disease or other bodily infirmity or other disease," or a phrase of like nature. There is clearly a distinction between the two contracts. Of course, this is not the only reason for the conflict in decisions. It is not the reason that the rule of this court is somewhat confused, as will be hereinafter shown.

The different courts have adopted different reasons as a basis to determine whether or not there shall be a recovery on such policies. Some courts base their decisions on the rule of efficient proximate cause of the accidental injury, others the remote cause, others reasonable interpretation

of the contract, others the intention of the parties to the contract, and others whether or not the diseased condition of the insured was the usual or necessary effect of the insured's age.

It seems reasonably clear that a policy with the phrase "resulting directly, independently and exclusively" refers to the efficient, substantial and proximate cause of the disability at the time it occurred. On the other hand, a policy which also has the phrase "wholly or partly, directly or indirectly, from disease or mental or bodily infirmity" refers to another contributory cause, whether proximate or remote. To illustrate: A person might be standing near a stone wall and become dizzy and fall and receive a serious injury. Clearly there is an accident. But if the dizziness was caused by an existing illness or disease of the insured, the illness or disease would be the remote or indirect cause of the injury. It would at least in part cause the injury. It would be a contributing and cooperating cause. But, whether a proximate or remote cause, if a contributing cause, there can be no recovery where such a cause is excluded by the policy. If the results of the accident, added to the diseased condition of an insured, produced the ultimate total result, under policy having the phrase "wholly or in part, directly or indirectly," there could be no recovery. But the disease must be of such a substantial character as to cause or in a substantial way to cooperate with the results of the injury to produce the total disability. Of course, in a case where the disease of which an insured was disabled resulted from the accidental injury, the situation would be different; as also it would be if the insured had a disease and the accidental injury caused the disablement independently of the disease.

Where the policy does not include the disease provision against disability "caused directly or indirectly, wholly or partly, by bodily or mental infirmity or other disease," or a like phrase, the modern rule seems to be as expressed in *Fidelity & Casualty Co. v. Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A. n. s. 493, and in *Driskell v. United States*

*Health & Accident Co.*, 117 Mo. App. 362, 93 S. W. 880. In the latter cause it is stated:

"People differ so widely in health, vitality and ability to resist disease and injury that what may mean death to one man would be comparatively harmless to another, and, therefore, the fact that a given injury may not be generally lethal does not prevent it from becoming so under certain conditions; and if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury."

In the *Meyer* case it is stated that the policy does not contain the disease provision and this is given as a reason for not following several leading cases named in the opinion, and the above quotation from the *Driskell* case is approved.

Now, what are the decisions of this court on such policies? In *Ward v. Aetna Life Ins. Co.*, 85 Neb. 471, 123 N. W. 456, the first point of the syllabus is: "In an action on a policy of accident insurance, which provides that the company shall be liable for the death of the assured resulting from bodily injuries effected through external, violent and accidental means which, independently of all other causes, produced his death, it is error to instruct the jury that there may be a recovery under such policy if they find that the death resulted proximately and as the moving cause from the accident, where 'there were other causes that accelerated, or, even being added, resulted in death.' " In the opinion is the following language: "If a beneficiary under an accident policy can add other causes than those

resulting from the accident and base a recovery upon the death of the assured from such added causes, there would be no limit to the liability of an accident insurance company, and the conditions in its policy would be valueless." The case was before the court several times. There appears to be no disease provision in the policy, but the court did not permit a recovery when the results of the disease were added to the results of the accident, thus causing total disability.

Then later, in *Moon v. Order of United Commercial Travelers*, 96 Neb. 65, 146 N. W. 1037, the policy included the disease provision. A careful study of this case shows that recovery was permitted on the theory that the accidental injury was the proximate cause of the death of the insured, suffering from a diseased condition, which was the usual and necessary condition of old age. This conclusion as to the basis of the decision is sustained by statements in the opinion: "It is also contended by the defendant that the death was in consequence of disease, and that it was caused wholly or in part by bodily infirmity, and that the injury received was not the proximate, sole and only cause of the death. This would seem to bring us to the question whether the beneficiary of an elderly person who dies because of the injury received through an accident can recover anything if the organs of the body are affected by the age of the assured. When the membership is created, it must be known that the member will grow old if he lives, and that the organs of his body, including the heart, lungs and kidneys, are likely to be affected in time, and that the assured will be unable to resist in his old age the force of an accident which he might have successfully resisted at an earlier period." The only cases cited in the opinion on the question now under consideration are Iowa and Wisconsin cases, where the disease resulted from the accident. The case of *Ward v. Aetna Life Ins. Co., supra,* was not mentioned. In the opinion a large amount of evidence is set out. There seems to be no complaint as to instructions. A reading of the opinion does not convince us that the ques-

tion now considered was then considered by the court. See note, 34 L. R. A. n. s. 445.

The defendant pleaded and its evidence tended to sustain the contention that plaintiff's total deafness was partly caused by disease. This evidence was disputed by the plaintiff. Nevertheless it was one of the theories of the defense presented by it at the trial. Therefore, it was a question for the jury under proper instructions. On this phase of the case, instruction No. 7 given by the court permits the jury to find for the plaintiff, if they find plaintiff was partially deaf before the accident, and that the electrical shock received by him in the accident added and caused additional deafness, which, combined with the prior deafness, resulted in the total disability. The instruction disregarded and eliminated the effect of the condition of plaintiff's ear at and prior to the time of the accident, unless any disabling condition of deafness because of such claimed accident was due partly to the progressive character of the disease. This is contrary to the insured's contract and to the law, as heretofore shown. The requested instruction was made at the proper time by the defendant and was such an instruction as would serve to guide the jury in weighing certain features of the evidence in connection with the issues made by the pleadings. It was a correct statement of the law and was not covered by any instruction given by the court. The court did give an instruction touching this feature of the case, but it was not complete. It was the duty of the court to give the requested instruction or one of similar import. Not to do so under the above facts, issues and circumstances was prejudicial error.

The appellee in his brief seemingly endeavored to justify the giving of instruction No. 7 and the not giving of defendant's requested instruction by contending the substance is covered by the court's instructions, and that some of the defendant's expert medical witnesses on cross-examination in effect stated that the total deafness of plaintiff would have been produced by the accident whether plaintiff's ears were diseased or not at the time of the accident. The record

does not sustain this contention. Even though the witnesses did so state, the defendant produced other evidence in conflict therewith, which made the question one for the jury under proper instructions.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED.