Jay B. STROBURG, Petitioner,

v.

**INSURANCE COMPANY OF NORTH AMERICA, Respondent.**

No. B–2323.

Supreme Court of Texas.

March 3, 1971.

Rehearing Denied April 14, 1971.

---

Jones, Blakeslee, Minton, Burton & Fitzgerald, Bill Fitzgerald, Austin, for petitioner.

Clark, Thomas, Harris, Denius & Winters, E. Barham Bratton and Barry Bishop, Austin, for respondent.

CALVERT, Chief Justice.

Jay B. Stroburg, son of John B. Stroburg, Jr., brought suit as the beneficiary of a

policy of insurance issued by respondent and insuring his father against bodily injuries, including death, caused by accident. Upon a jury verdict, the trial court rendered judgment for the plaintiff. The court of civil appeals has reversed and rendered judgment that the plaintiff take nothing. 456 S.W.2d 402. We reverse the judgment of the court of civil appeals and remand the cause to that court for further consideration.

The insured was involved in a one car collision in the 2200 block of South Lamar in Austin on January 27, 1968. He had been proceeding in a northerly direction on Lamar, a four-lane thoroughfare, which is generally straight and level at the point of the collision. His automobile left the northbound lane, crossed the two southbound lanes, ran into a service station, and struck a six-inch steel pole. The insured incurred serious and extensive bodily injuries in the collision, including several broken bones and major internal injuries, and died on February 22, 1968. After his father's death, petitioner brought suit for the principal sum of the policy in the amount of $20,000, plus statutory penalties and attorney's fee.

By the terms of its policy, the insurer agreed to insure " * * * against specified loss * * * [including loss of life] resulting directly and independently of all other causes from bodily injuries caused by accident * * *." The policy expressly excluded loss caused by or resulting from "illness, disease, * * * bodily infirmity or any bacterial infection other than bacterial infection occurring in consequence of an accidental cut or wound."

The plaintiff alleged that the death of his father resulted directly and independently of all other causes from bodily injuries suffered in the accident of January 27th and from complications thereof. Defendant pleaded a general denial and that the deceased did not lose his life "directly and independently of all other causes from bodily injuries caused by accident * * *."

Defendant also pleaded its non-liability by virtue of the exclusion quoted above. It was the theory of the defendant that a bleeding ulcer and emphysema contributed to cause the insured's death. Under the provisions of Rule 94, Texas Rules of Civil Procedure, the plaintiff had the burden of proving not only that the death of his father resulted directly and independently of all other causes from bodily injuries caused by accident but also that it was not caused by and did not result from the ulcer and emphysema.

As a basis for the trial court's judgment in his favor, plaintiff secured jury answers as indicated to the following special issues:

"1. Do you find from a preponderance of the evidence that the death of John B. Stroburg, Jr., on February 22, 1968 resulted directly and independently of all other causes from bodily injuries, if any, caused by the automobile accident of January 27, 1968?

ANSWER Yes.

2. Do you find from a preponderance of the evidence that the ulcer of John B. Stroburg, Jr., if any, did not contribute to his death?

ANSWER It did not contribute to his death.

3. Do you find from a preponderance of the evidence that the emphysema of John B. Stroburg, Jr., if any, did not contribute to his death?

ANSWER It did not contribute to his death."

In reversing the trial court's judgment, the court of civil appeals held that the evidence did not support the jury finding that the insured's death resulted "directly and independently of all other causes from bodily injuries" caused by the automobile accident. In this connection, the court stated:

"We find that the evidence shows that two or more causes concurred to produce

death, only one being accidental bodily injury. The undisputed evidence shows that a pre-existing bleeding ulcer induced fainting or weakness to cause the accident. There was direct testimony not refuted by other direct evidence that chronic emphysema caused one lung to collapse in the hospital which created a burden the remaining diseased lung was incapable of bearing. The ulcer and chronic emphysema concurred with accidental injuries to cause death."

Based upon these findings, the court of civil appeals concluded that the insured's death did not "fall within the coverage provision of the accident policy sued on, and there is no evidence to support the jury findings * * *." Having held that the death did not fall within the policy's coverage, the court of civil appeals did not discuss the applicability of the policy's exclusion provision.

The conclusion of the court of civil appeals was based upon the official death certificate of the insured and the testimony of Drs. A. Quandros DaSilva and William S. Moskovitz. We first examine the court's conclusion that chronic emphysema concurred with accidental injuries to produce death.

The death certificate, executed by Dr. Moskovitz, recited that the "immediate cause of death" was "generalized peritonitis subphrenic abscess; gastro-cutaneous fistula." The immediate cause was said to be due to "Ruptured colon, spleen, stomach and liver," reported to be due to "Bleeding duodenal ulcer causing car accident." Space for showing "Other significant conditions contributing to death but not related to the terminal disease condition," was filled in: "Compound Fr mandible; fractured pelvis, inanition; bullous emphysema, Fractured ribs; pneumothorax." Finally, the death certificate required that the person executing it "[d]escribe how injury occurred." In the space provided for an answer, Dr. Moskovitz reported: "Bleeding ulcer led to syncope ['a brief loss of consciousness'—The American Heritage Dictionary] causing car wreck which caused car wreck and the multiple injuries."

The testimony of Dr. DaSilva, much of which is quoted in the opinion of the court of civil appeals and need not be repeated here, might well support a fact finding by a judge or jury that emphysema was a contributing cause of the insured's death, but that does not solve our problem; our problem is whether there is support in the evidence for the jury's findings that the insured's death resulted directly and independently of the emphysema from bodily injuries caused by the automobile accident, and that emphysema did not contribute to his death.

■ " 'Independently' means 'solely,' 'only,' 'standing alone.' [cases cited]. The logical meaning of the policy terms [independently of other causes] limits the coverage to accidental bodily injuries which are the sole cause of death." Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110, 112 (Tex.Sup.1965). But, even so, "[r]ecovery is not defeated when a preexisting condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury." *Hudman,* supra. The jury was so instructed, and we are satisfied that it could reasonably have concluded from the testimony that the insured's condition of emphysema was so insubstantial in the scale of causation that it did not, in legal contemplation, contribute to cause his death.

■ The recitation in the death certificate is at best prima facie evidence that emphysema was a significant condition contributing to the insured's death. Art. 4477, Rule 54a, Vernon's Ann.Tex.Civ.Stats. It was subject to explanation and rebuttal. Dr. DaSilva persisted in his opinion that emphysema contributed to cause the insured's death, but it is obvious from his

testimony that he was using a strictly medical rather than a legal test of substantiality. In this connection, he testified as follows:

"I was trained in this way, in that everything that you find abnormal is one step forward to final defeat, and in the particular case, everyone of these abnormalities that were found at autopsy were contributory to his death, and this is the way in which I think this leakage was contributory to his death. This is what I mean by it."

Dr. Moskovitz was examined rather closely concerning the nature of the injuries and the death of the insured. He testified that in his opinion the insured's death was caused by the massive injuries sustained in the wreck. Witness the following questions and answers:

Q. " * * * What caused his death, in your opinion, Doctor, in all reasonable medical probability?

A. It is always difficult to say exactly why someone dies, because your vital functions of the heart and everything seem to be going on. I would say that his cause of death was just the overwhelming infection and magnitude of the injuries that he received, and his body coped with it as long as he could, and then it couldn't cope with it any more, and he died.

* * * * * *

Q. Would you state for us, Doctor, in all reasonable medical probability what caused Mr. Stroburg's death?

A. The overwhelming injuries he received at the time of his accident.

Q. And those include the—

A. The multiple facial lacerations and the fractures, the fractured pelvis, the ruptured colon, the ruptured liver, the ruptured spleen, the ruptured stomach.

Q. All right, sir, in all reasonable medical probability, Doctor, did some other illness or disease contribute to Mr. Stroburg's death?

(Defendant's Objection Overruled)

A. As far as I can say, at the time of his death there was no other reason for his death other than the overwhelming injuries that he had received."

In so far as the emphysema is concerned, we conclude that the jury's answers to special issues Nos. 1 and 3 are supported by the evidence.

■■ We next consider the conclusion of the court of civil appeals that the evidence establishes as a matter of law that a bleeding ulcer concurred with the insured's accidental bodily injuries to produce death. The court's conclusion is based upon its reasoning that if the bleeding ulcer caused the accident, *a fortiori* it contributed to cause the insured's bodily injuries and death. The conclusion is contrary to that reached in similar situations by a number of well-reasoned decisions in which disease induced accidents were held to be within policy coverage. See Lawrence v. The Accidental Ins. Co., Law Reports, 7 Q.B.D. 216 (1881); Winspear v. The Accident Ins. Co., Law Reports, 6 Q.B.D. 42 (1880); United States Fidelity & Guaranty Co. v. Blum, 270 F. 946 (9th Cir. 1921); Bohaker v. Travelers' Ins. Co., 215 Mass. 32, 102 N.E. 342, 46 L.R.A.,N.S., 543 (1913). The rationale of these decisions is well expressed in the case last cited in which the insured died from injuries sustained in a fall caused by delirium. The court said:

"The language of this contract, to the effect that the 'accidental means' must have operated 'independently of all other causes' to produce the death, does not change the general rule of law, that the proximate and not a remote cause is the one to which the law looks.

" * * * The policy in the case at bar does not go so far as to require the court

to search beyond the active, efficient, procuring cause to a cause of a cause. When one single predominant agency is disclosed, directly producing as a natural and probable result the injury, which is accidental, and which operates independently of other like causes, then the effectual means required by the policy have been found. * * *" 102 N.E. 344.

In harmony with the reasoning of the Massachusetts court, we have held that " 'proximate cause' as applied in insurance cases has essentially the same meaning as that applied by our own courts in negligence cases, except that in the former the element of foreseeableness or anticipation of the injury as a probable result of the peril insured against is not required." Federal Life Ins. Co. v. Raley, 130 Tex. 408, 109 S.W.2d 972 (1937). By this rule a remote cause of a cause would not be a proximate cause.

Respondent cites a number of decisions of courts of other jurisdictions which are said to support the holding of the court of civil appeals. See Jackson v. Southland Life Ins. Co., 239 Ark. 576, 393 S.W. 2d 233 (1965); Knowlton v. John Hancock Mut. Life Ins. Co., 146 Me. 220, 79 A.2d 581 (1951); Gittelson v. Mutual Life Ins. Co., 266 App.Div. 141, 41 N.Y.S.2d 478 (1943); Johnson v. Aetna Life Ins. Co., 66 Ga.App. 629, 18 S.E.2d 777 (1942); Independent Life and Accident Ins. Co. v. Causby, 94 Ga.App. 305, 94 S.E.2d 388 (1956); Russell v. Glens Falls Ind. Co., 134 Neb. 631, 279 N.W. 287 (1938); Seater v. Penn Mut. Life Ins. Co. of Philadelphia, 176 Or. 542, 156 P.2d 386, 159 P.2d 826 (1945); Lederer v. Metropolitan Life Ins. Co., 135 Pa.Super. 61, 4 A.2d 608 (1939); McGarity v. New York Life Ins. Co., 359 Pa. 308, 59 A.2d 47 (1948). The cases have a common denominator; in each case the policy of insurance on which suit was brought contained a provision excluding liability if disease or bodily infirmity contributed "directly or indirectly" to the insured's injuries or death. Liability was denied in such cases because of the wording of the exclusionary clause and not because of the wording of the coverage clause. The distinction was drawn in the early case of Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945 (6th Cir. 1893), in which the court recognized the soundness of the English decisions in *Lawrence* and *Winspear,* supra, but held that a different result is required when a policy contains a provision excluding liability when disease or bodily infirmity contributes to the loss "directly or indirectly." This distinction in the cases was recognized also in Bohaker v. Travelers' Ins. Co., supra, from which we have quoted extensively. It was recognized also in Russell v. Glens Falls Indemnity Co., supra, where the court said:

> "It seems reasonably clear that a policy with the phrase 'resulting directly, independently and exclusively' refers to the efficient, substantial and proximate cause of the disability at the time it occurred. On the other hand, a policy which also has the phrase 'wholly or partly, directly or indirectly, from disease or mental or bodily infirmity' refers to another contributory cause, whether proximate or remote." 279 N.W. 291.

This brings us to a consideration of the language of the exclusionary provision in the policy in this case.

■ Part III of the policy, labeled "EXCLUSIONS" reads: "This policy does not cover loss caused by or resulting from any one or more of the following:

"* * *.
"D. Illness, disease * * * bodily infirmity or any bacterial infection other than bacterial infection occurring in consequence of an accidental cut or wound;

"* * *."

On the basis of the decisions heretofore cited, we hold that the provision excludes liability for losses from the itemized risks in "D" only when such risks are a proximate as distinguished from an indirect

or remote cause of the loss. The instant policy does not exclude loss caused "directly or indirectly" by illness, disease, etc., and the evidence does not establish conclusively that disease was a proximate cause of the death of the insured. We hold that the jury's findings made the basis of the trial court's judgment are supported by the evidence.

Respondent had before the court of civil appeals points of error asserting that the evidence is factually insufficient to support the jury's findings. The points are within the exclusive jurisdiction of the court of civil appeals and were not decided by that court either expressly or by necessary implication. The cause must, therefore, be remanded to the court of civil appeals for consideration and decision of the insufficient evidence points of error. See Stanfield v. O'Boyle, 462 S.W.2d 270 (Tex.Sup.1971).

The judgment of the court of civil appeals is reversed and the cause is remanded to that court.