The AMERICAN HOSPITAL & LIFE IN-
SURANCE COMPANY, Appellant,

v.

Lela CHOATE, Appellee.

No. 7599.

Court of Civil Appeals of Texas,
Beaumont.

July 11, 1974.

Motion for Rehearing Overruled
Aug. 29, 1974.

Chandler, Conner & Porter, Lufkin, for appellant.

Maroney & Cely, Lufkin, for appellee.

DIES, Chief Justice.

Plaintiff below, Lela Choate, sued defendant below, The American Hospital & Life Insurance Company, for disabilities alleged to have occurred as the result of a fall. Trial was to a jury which found for the plaintiff and from which defendant perfects this appeal. The parties will be referred to as they were below. The policy of insurance executed by defendant provided:

> "The Company will pay the benefits named in this policy for any loss resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external and accidental means whether such injuries occur in the course of any occupation or employment, or otherwise."

> "Insurance under the policy shall not cover death or other loss caused or contributed to . . . any loss, caused or contributed to directly or indirectly by disease, or bodily or mental infirmity or medical or surgical treatment or diagnostic procedures therefor."

Defendant brings thirteen points of error, but they all relate to whether plaintiff's arthritic condition precludes recovery in view of the policy language above set out.

Our Supreme Court in Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110 (Tex.1965), reviewed similar

policy provisions. There: "All of the evidence shows that Hudman died from the effects of two concurring causes," (p. 111); i.e. overexertion and a diseased heart. The Court concluded that plaintiff failed to prove accidental bodily injury "independently of other causes" saying: "'[i]ndependently' means 'solely,' 'only,' 'standing alone.'" (p. 112)

But, the Court said:

"The result we reach in this case is compelled by the terms of the policy and the evidence of all the physicians. We do not hold that every preexisting frailty or enfeeblement of the human body which coexists with an accidental injury will defeat recovery under such policies as Hudman's. To do so would defeat recovery in most instances because mere senescence makes all flesh heir to infirmity and weakness. . . . Recovery is not defeated when a preexisting condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury." (398 S.W.2d at 114)

This is cogently amplified in a concurring opinion by our present Chief Justice:

"Suppose, for example, that a man of middle age with a mild heart condition, known or unknown, is in an automobile accident, is thrown through the windshield, and breaks several bones. There is proof by autopsy that the insured had the imperfect heart and that a 100-percent healthy young person would have survived. But the older person with the heart condition died. Or suppose a person has hemophilia so that he bleeds more than other people. He is in a serious automobile accident, bleeds a lot, and dies soon thereafter. The proof is made, and it is established, that a well young person would not have died under the same conditions. To hold that there could be no recovery would be to say that accident victims must be in good health when they get accidently killed; i.e., if *any* physical defect or condition, known or unknown, contributed to the death of the victim, to whatever degree however small, the insured or his beneficiary could not recover. . . .

"Many persons of middle or old age have something wrong with them. Accident insurance companies should have to take the people they insure as they find them unless there are some other more specific provisions as to good health in the policy, approved by the Board of Insurance.

"The insurance contract speaks only in terms of 'other causes.' It is unnecessary here to say that any contributing physical defect, however small, is a *cause* within the meaning of the policy. They might well be classified as *conditions.*" (id., 115–116)

In Stroburg v. Insurance Company of North America, 464 S.W.2d 827, 830 (Tex.1971), our Supreme Court quotes with approval from Bohaker v. Travelers' Ins. Co., 215 Mass. 32, 102 N.E. 342 (1913):

"'The language of this contract, to the effect that the "accidental means" must have operated "independently of all other causes" to produce the death, does not change the general rule of law, that the proximate and not a remote cause is the one to which the law looks.'"

The policy under review by the Court in *Stroburg* excluded any loss caused by or resulting from: "'D. Illness, disease * * * bodily infirmity or any bacterial infection other than bacterial infection occurring in consequence of an accidental cut or wound.'" The Court held that this provision excluded "liability for losses . . . only when such risks are a proximate as distinguished from an indirect or

remote cause of the loss." (464 S.W.2d at 831, 832)

Dr. W. Watson of Wells, Texas, testified by deposition. He had treated plaintiff prior to her fall for "minor arthritis." It was in her low back and was typical having remissions and exasperations. The fall aggravated her arthritic condition. The arthritis was a contributing factor to her disability, at least partially. At the time of plaintiff's fall, the arthritis was dormant and causing her no difficulty. The arthritis itself produced no disability absent the fall. It was his opinion the fall was the direct producing cause of her disability. She was asymptomatic at the time of the injury.

We believe the effect of this medical testimony is that plaintiff's arthritis at the time of her fall was "dormant and insubstantial" (*Hudman,* supra) and does not defeat plaintiff's claim. Defendant's points of error are all overruled and the judgment of the trial court is affirmed.

Affirmed.