**Ernest HENDERSON, Appellant,**

**v.**

**LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE,**
**Appellee.**

**No. 18040.**

Court of Civil Appeals of Texas,
Fort Worth.

Nov. 30, 1978.

Leeper & Priddy, and Charles S. Leeper, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, and Mark C. Hill, Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

Ernest Henderson sued under two insurance policies with Life & Casualty Insurance Company of Tennessee for $40.00 per day of hospitalization. He alleged he had been hospitalized for twelve days as a result of an automobile accident. A jury awarded Henderson $480.00, which covered twelve days' hospitalization. Attorney's fees were also awarded. The trial court, granting insurance company's motion in part, rendered a judgment non obstante veredicto which awarded Henderson only $80.00 damages and denied him attorney's fees. Henderson has appealed the trial court's judgment. Insurance company, by cross-points, protests the $80.00 award.

We reverse and render.

Our ultimate decision in this case hinges on whether or not Henderson discharged the burden of negating the exclusion plead by Insurance Company. The exclusion was to the following coverage provision contained in each policy:

"DAILY HOSPITAL BENEFIT—Subject to the terms and conditions hereinafter stated, the Company will pay a daily hospital benefit of $20.00 for each day that the Insured is necessarily confined, under the treatment of a legally qualified physician or surgeon, as an in-patient in a hospital as a direct result of bodily injury caused by accident while this Supplemental Agreement is in force.

"EXCLUSIONS AND LIMITATIONS OF LIABILITY—

"1. The daily hospital benefit is not payable with respect to any hospital confinement which results directly or indirectly from any one of the following causes:

"(a) . . .

"(b) bodily or mental infirmities or disease in any form or medical or surgical treatment thereof; . . . ."

The parties agree that such burden was on Henderson. *Sherman v. Provident American Insurance Company,* 421 S.W.2d 652 (Tex.1967); *Stroburg v. Insurance Company of North America,* 464 S.W.2d 827 (Tex.1971).

According to the facts stated in Henderson's brief, he had had trouble with rheumatic heart disease, high blood pressure, gout, swelling of his ankles and feet, and his back before the automobile collision occurring on May 12, 1976.

The brief further stated that Henderson was riding as a passenger in his automobile while his wife was driving. Their automobile was struck from the rear and he was thrown against the dashboard. He could not speak and was in great pain. He had not complained of any problems immediately before the collision occurred. His automobile sustained light damage to the left rear bumper and to the dashboard. Upon his arrival at John Peter Smith Hospital by ambulance, Henderson was given shock treatments to his heart. The primary diagnosis, according to the medical records of the hospital was "urethral trauma secondary to Foley catheterzation" and "respiratory arrest and cardiac arrest". The ambulance report shows Henderson was "diaphetic, cynanotic, and unconscious with an undetectable pulse".

Henderson testified that he had worked in the past as a farm laborer operating a sandblaster, concrete form laborer and cement finisher until he stopped working in 1972 due to a back injury. In the collision herein, he was thrown against the dashboard and knocked unconscious. During the day before the collision he had no trouble with his stomach, heart, or back. He had never suffered a heart attack prior to this occurrence. Although he had requested that the insurance company pay the benefits due under the above listed policies of insurance, they did not.

Dr. Evalea Glanges, M.D., was called as a witness for Life and Casualty. Dr. Glanges testified that she was the Assistant Director of Surgery at John Peter Smith Hospital when Henderson was admitted into the intensive care unit with blood coming from his Foley catheter. A suprapubic cystostomy was performed—opening the bladder through Henderson's lower abdominal wall to relieve the bladder of its urinary content on May 12, 1976. He also had a possible heart attack by history with respiratory arrest. Dr. Glanges did not think

**636**

that the trouble with the urethra was caused directly by the accident. Dr. Glanges could not say as to whether or not Henderson had the condition prior to the automobile collision. "Respiratory arrest" meant that Henderson was not breathing on his own. He was revived by cardio-pulmonary resuscitation. The instigation of I.V., N.G. suction, and Foley catheterization is a standard procedure in similar emergencies. Foley catheterization had to be done to investigate whether or not Henderson had suffered any internal injuries. Dr. Glanges could not say for a certainty that there was no blood returned before the Foley catheter was inserted. She had no knowledge as to whether or not the bladder was torn until she opened it during surgery. Henderson had no previous history of prior bladder problems or urological work-up, either in the medical records or by personal history.

Dr. Glanges further testified that a person arriving at the hospital in cardio-respiratory arrest, as Henderson had, would be hospitalized for at least forty-eight hours, if only for observation. The automobile collision could have caused the respiratory arrest, in her opinion, by a vagal vagel response when the plaintiff hit the seat or something and quit breathing.

Having indulged every intendment reasonably deductible from the evidence, *Anglin v. Cisco Mortg. Loan Co.,* 135 Tex. 188, 141 S.W.2d 935 (1940), we are still confronted with insurance policies that *do* exclude payment for hospital confinement which results directly or indirectly from "bodily or mental infirmities or disease in any form or medical or surgical treatment thereof." In the *Stroburg* case, *supra,* cited by Henderson in support of his contention that the jury verdict should be upheld, Chief Justice Calvert specifically pointed out "[t]he instant policy does *not* exclude loss caused 'directly or indirectly' by illness, disease, etc." (Emphasis ours.) *Stroburg* did not have the exclusionary clause. This case does.

We agree that Henderson had to negate the exclusion with medical expert evidence. *Combined American Insurance*

*Company v. McCall,* 497 S.W.2d 350 (Tex. Civ.App.—Amarillo 1973, writ ref'd n. r. e.). We hold that Dr. Glanges' testimony and the hospital records failed to prove that the hospitalization did not result, directly or indirectly, from bodily or mental infirmities or disease. If it proved anything, such testimony and records tended to prove to the contrary.

We overrule the first point of error.

Having overruled the first point of error, it must follow that we overrule the second point of error since Henderson's attorney's fees depend on our holding that Life and Casualty was liable for the hospital per diem.

We sustain the insurer's crosspoint no. 1 and hold that trial court erred in entering judgment for $80.00. The same reasoning supporting our action overruling Henderson's first point of error applies to this crosspoint.

We sustain the third point of error of Henderson but agree with counterpoint no. 3 of Life and Casualty that failing to assess costs is harmless error. We cure the error by assessing costs against the appellant, Ernest Henderson.

We reverse the trial court's action in granting Ernest Henderson a judgment for $80.00 and render a take nothing judgment.