# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00737-CV

**Linda Edwards, Appellant**

**v.**

**Employees Retirement System of Texas and Group Life and Health, A Division of Fort Dearborn Life Insurance Company, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN203838, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The Board of Trustees of the Employment Retirement System of Texas (the Board)**[1]** denied Linda Edwards=s claim for voluntary accidental death and dismemberment benefits citing an exclusion in the policy for a death that was the Adirect result@ of the insured=s being under the influence of alcohol. The district court reviewed the record of the administrative proceedings and affirmed the Board=s order in its entirety. Linda Edwards contends that the district court erred because the Board lacked the authority to make findings of fact contrary to those recommended by the administrative law judge (ALJ), that the Board

---

**[1]** We use Athe Board@ when referring to the Board of Trustees of the Employment Retirement System of Texas. When we refer to the Employment Retirement System of Texas and Group Life and Health as parties in this litigation, we will use ERS.

failed to interpret the language of the policy exclusion in her favor, and that the Board erroneously changed the ALJ=s conclusion of law that ERS had met its burden of proof. We affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Linda Edwards made a claim with ERS seeking life insurance benefits through her daughter=s employment with the Texas Department of Criminal Justice. Linda Edwards=s daughter Yovette Edwards died in a single-car accident in the early morning hours of New Year=s Day 1999. She was survived by her mother and two minor children. Although Linda Edwards=s issues focus primarily on the legal standards relating to the Board=s denial of her claim, a brief overview of the record concerning the accident is useful.

Yovette Edwards attended two parties on the night of the accident with James McClendon. McClendon followed Yovette Edwards in a separate car as they traveled from the first party to the second. When the two left the second party, McClendon again followed Yovette Edwards=s car. McClendon was the only witness to the accident. He told police that, directly before the accident, Yovette Edwards was driving too fast for him to follow, and that he had to drive 45-50 miles-per-hour in order to keep her in sight. He then saw her car spin around and, when he caught up, the car was upside down. McClendon discovered that Yovette Edwards was not moving and ran to a nearby house to call an ambulance. She was later pronounced dead at the scene. An autopsy revealed that she had a blood alcohol content of .19 and a vitreous alcohol content of .13. Her death was caused by blunt force injuries to her skull.

Yovette Edwards=s car went off the road at a turn where the posted speed limit was 30 miles-per-hour. Police officers who investigated the scene concluded that Yovette Edwards=s car struck a mound of dirt by the side of the road causing it to roll over four or five times and eventually land upside down on the roadway. It was drizzling with a light fog, and the pavement was wet, slippery, and poorly lit.

The role of Yovette Edwards=s intoxication in the accident was examined by several sources. Deputy Medical Examiner Elizabeth Peacock explained in her deposition that consumption of alcohol can lead to a variety of symptoms including: emotional instability, decreased inhibitions, loss of critical judgment, impairment of memory and comprehension, decreased sensory response, slower reaction time, muscular incoordination, disorientation, mental confusion, dizziness, and double vision. She stated that a person driving with a blood alcohol content of .19 would be a danger to herself and others. Dr. Peacock also concluded that in an accident involving damp road conditions, poor visibility, and excessive speed, the driver=s blood alcohol content of .19 would be the most significant factor in causing the accident. Toxicologist J. Rod McCutchen gave deposition testimony that similarly explained the effects of alcohol on a person and concluded that Yovette Edwards=s intoxication made the accident much more likely. Officer Jeff Donohue, who investigated the accident, was also asked about the effects of alcohol in his deposition. He testified as to the general impairments associated with intoxication and concluded that Yovette Edwards=s blood alcohol content of .19 contributed to her accident.

After a hearing and full briefing by the parties, the ALJ issued a Proposal for Decision (PFD) granting Linda Edwards=s appeal of the denial of her claim. The PFD interpreted the exclusion in the insurance policy to apply only when the insured=s intoxication was a proximate cause of the loss. The PFD discredited the medical experts= conclusions that Yovette Edwards=s intoxication was the most significant

3

factor in the accident on the grounds that those experts lacked expertise in accident reconstruction and did not view the scene. Citing Officer Donohue=s deposition testimony, the ALJ found that:

the concurrent probable causes of the accident (each of which, if removed from the chain of causation, would likely have resulted in no accident) were speeding, poor visibility, and the odd terrain. An additional probable cause of her death was the existence of the dirt mounds, in that the three causes of the accident, in a natural and continuous sequence, coupled with encountering the dirt mounds, led to her car flipping and killing her.

Although Donohue stated that Yovette Edwards=s intoxication Acontributed@ to the accident, the ALJ concluded that Aan inference that intoxication was the most significant factor, and that its absence would have avoided the accident, cannot be drawn from Officer Donohue=s testimony.@

The General Counsel of ERS submitted alternative proposed findings of fact and conclusions of law to the Board. ERS=s proposed findings modified the ALJ=s findings of facts by adding a finding that Yovette Edward=s blood alcohol content was an additional factor, along with her speed, the poor visibility, and the odd terrain, Awithout each of which the accident would not have occurred.@ Citing title 34, section 67.91 of the administrative code, the proposed findings contained an extensive discussion explaining that the addition was justified because the original finding in the PFD was (1) against the intent, as determined by the board, of the intoxication exclusion in the insurance policy; (2) was against the weight of the evidence; (3) was based on an insufficient review of the evidence and was clearly erroneous and illogical; and (4) was not sufficient to protect the public interest, the interest of the plans and programs for

4

which the Board is trustee, or the interests, as a group, of the participants covered by such plans and programs.

The proposed findings modified the ALJ=s conclusions of law by eliminating a paragraph that stated that ambiguities in the terms of the exclusion for intoxicationCincluding the term Adirect result@Cshould be construed in favor of the insured. The Board changed the language of the conclusions to reflect its determination that the exclusion for intoxication applied to Linda Edwards=s claim.

The Board adopted ERS=s revised findings as submitted in an August 21, 2002 order denying benefits to Linda Edwards. Linda Edwards filed suit in district court challenging the Board=s decision. The district court affirmed the Board=s order in its entirety finding that it was made in compliance with all applicable law, supported by substantial evidence, and not arbitrary and capricious.

## DISCUSSION

Linda Edwards challenges the Board=s failure to defer to the ALJ=s findings of adjudicative fact and also contends that the Board failed to interpret the policy exclusion in her favor when it defined Adirect result@ as synonymous with a proximate cause standard.

**Deference to the ALJ=s factual determinations**

Linda Edwards contends in her first and third issues that the Board failed to accord proper deference to the factual determinations of the ALJ, specifically to the findings that her daughter=s intoxication was not a Aconcurrent probable cause@ of the accident, and that ERS failed to meet its burden to prove that

5

the intoxication exclusion applied to her claim. She argues that the ALJ=s findings regarding the role of alcohol in the accident and its ruling that ERS had not met its burden of proof were findings of adjudicative fact that the Board was not authorized to modify. *See Flores v. Employees Retirement Sys.*, 74 S.W.3d 532, 539 (Tex. App.C2002, pet. denied). Such a change was thereby arbitrary and capricious and rendered the role of the ALJ meaningless. *See id.* at 540 (citing *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 564 (Tex. 2000)).

In *Flores*, this court discussed the concepts of adjudicative facts and legislative facts. *See id.* We recognized that one of the purposes of the Administrative Procedure Act is to limit the discretion of an agency in reviewing the recommendations of an ALJ in a contested case hearing. *Id.* at 540. The ALJ is generally in a better position to determine questions of who, what, where, when, how, and why (adjudicative facts) because the ALJ is a neutral decision maker who has personally heard the evidence and has had the opportunity to observe the demeanor of the witnesses. *Id.* at 539. By contrast, factual determinations that assist a tribunal decide issues of law and policy (legislative facts) are better suited for the agency. *Id.*

In light of these principles, the legislature has limited the discretion of the Board through section 815.511 of the government code. Although the code specifically grants the Board the power to Amodify, refuse to accept, or delete any proposed finding of fact and conclusion of law contained in a proposal for decision submitted by an [ALJ],@ the statute requires the Board to state its reasoning for the changes in writing and allows the Board to adopt rules governing its review of contested case hearings. Tex. Gov=t Code Ann. ' 815.511(d) (West Supp. 2004). The Board=s rules adopted in compliance with

6

the government code further guide the Board=s discretion. *See* 34 Tex. Admin. Code ' 67.91(b) (2004) (Employees Retirement Sys., Hearings on Disputed Claims). The Rules permit the Board to:

> modify or delete any proposed finding of fact or conclusion of law, or make alternative findings of fact and conclusions of law, if it determines that the proposal for decision submitted by the examiner, or a proposed finding of fact or conclusion of law therein is:
>
> (1) clearly erroneous or illogical;
>
> (2) is against the weight of the evidence;
>
> (3) is based on misapplication of the rules of evidence or insufficient review of the evidence;
>
> (4) is inconsistent with the terms or intent, determined by the board, of benefit plan or insurance policy provisions; or
>
> (5) is not sufficient to protect the public interest, the interests of the plans and programs for which the board is trustee, or the interests, as a group, of the participants covered by such plans and programs.

*Id*. Under these rules, the Board may not modify, delete, or add findings of fact and conclusions of law merely because the Board does not agree with the ALJ; the Board=s changes must be justified under the rule with its reasons stated in writing. *See id*.

Our review of the Board=s findings of fact and conclusions of law focuses on whether the Board=s stated reasons for modifying the PFD were consistent with its discretion under section 815.511 of the government code and title 34, section 67.91 of the administrative code. An ALJ=s findings of fact, even adjudicative facts, are not completely isolated from review by the Board. The Board=s discretion to modify an ALJ=s findings stems from the statute and its administrative rules.

7

Linda Edwards contends that the Board arbitrarily modified the ALJ=s findings in her case by improperly substituting its own view of the evidence after it had delegated that role to the ALJ. *See Davis*, 34 S.W.3d at 564; *Flores*, 74 S.W.3d at 539. Contrary to Linda Edwards=s argument, these cases do not generally prohibit an agency=s modification of an ALJ=s findings of adjudicative fact; rather an agency=s modification is arbitrary and capricious only when the modification is contrary to the agency=s statutory authority or the administrative proceeding is otherwise lacking in procedural due process. In *Davis*, for example, the supreme court focused its consideration on whether a school board=s modification of findings was permitted by the specific provision of the education code governing its authority to review the findings of an ALJ. *See* 34 S.W.3d at 564. In *Flores*, this court also looked to the government code and the administrative code provisions that prescribe the Board=s authority to review findings in contested case hearings. *See* 74 S.W.3d at 541; *see also Langford v. Employees Retirement Sys.*, 73 S.W.3d 560, 566 (Tex. App.C2002, pet. denied).

In this case, the Board gave proper notice to the parties, accepted briefing on the issues and heard argument. The Board gave detailed justifications for its modification of the ALJ=s findings, citing the specific provisions of the government code and administrative code that authorized the Board to make the changes. Although Linda Edwards contends that the Board improperly cited policy grounds for its

8

modification of the ALJ=s fact findings regarding the role of alcohol in the accident, the Board also stated that the ALJ=s decision was against the weight of the evidence. *See* 34 Tex. Admin. Code ' 67.91.[2]

In its written statement explaining why the ALJ=s finding was against the weight of the evidence, the Board cited the expert testimony of medical examiner Dr. Peacock and toxicologist McCutchenCthat a person with a blood alcohol content of .19 would be severely impaired, dangerous, and much more likely to drive recklessly. Both Peacock and McCutchen concluded that Yovette Edwards=s intoxication was the most significant factor in causing her accident. The Board discussed officer Donohue=s testimony concerning the adverse effects of alcohol on a driver and his conclusion that Yovette Edwards=s intoxication was a Acontributing factor@ in the accident. The Board also cited Linda Edwards=s testimony that her daughter usually was a cautious driver and would not normally have driven at an unsafe speed in adverse conditions like those at the time of the accident.

The evidence in the agency record consistently points to Yovette Edwards=s intoxication as the primary reason for the accident. The PFD attributes the accident to Yovette Edwards=s excessive speed in poor conditions, but ignores the testimony of all of the witnesses who attributed her loss of control of the car to her blood alcohol content, which was more than twice the legal limit. We agree that the ALJ=s

---

**2** The Board cited four other permissible justifications for a modification of findings stated in section 69.71 and provided a thorough discussion of why the provisions applied to its modification. Linda Edwards has not specifically challenged the Board=s explanations, but asserts that the Board lacked the authority to modify the ALJ=s findings of fact generally.

findings of fact were against the weight of the evidence and it was, therefore, within the Board=s discretion to modify them. Likewise, we find nothing arbitrary in the Board=s modification of the conclusions of law to reflect its determination that intoxication played an important role in the accident and that ERS met its burden to prove the exclusion applied. Because the Board=s actions were within its statutory authority, not arbitrary and capricious, we overrule Linda Edwards=s first and third issues.

**Direct result**

Linda Edwards also contends that the Board improperly interpreted the language of the policy excluding coverage for a death that is the Adirect result of the insured Employee being under the influence of alcohol as evidenced by a blood alcohol content of at least .10 percent weight by volume.@ She argues that the term Adirect result@ is ambiguous and should be construed in her favor. Although she does not indicate what interpretation the Board should have adopted, the arguments in her brief imply that she would have the exclusion apply only if alcohol was the sole cause of the accident.

The ALJ, however, did construe the term Adirect result@ in favor of the insured and determined that it meant proximate cause. Although the Board deleted the paragraph indicating that the language of the exclusion be construed in favor of the insured, it retained the definition of Adirect result@ as proximate cause. Even construing the meaning of Adirect result@ in favor of the insured, we cannot conclude that the exclusion only applies when intoxication was the sole cause of an accident.

The authority cited in support of this argument interprets language where the insurance policy refers to a loss Aresulting directly *and independently of all other causes*@ from an accident. *See*

10

*Stroberg v. Insuranc*e *Co. of No. Am.*, 464 S.W.2d 827, 828 (Tex. 1971).  The supreme court in *Stroberg*, however, focused on the language Aindependently of all other causes@ in concluding that an insurance policy applied only when the accident was the sole proximate cause of the loss.  *Id*. at 829.  The implication of *Stroberg* is that without the addition of the phrase Aindependently of all other causes,@ the language Aresulting directly@ means proximate cause.  *See also Flores*, 74 S.W.3d at 548 (AHad the legislature intended a sole cause standard, it could have given some indication, for example, by using >solely results= or >directly results independently of all other causes.=@).[3]

We interpreted similar language in *Flores* in determining the language defining occupational disability as a disability or disease that Adirectly results from a specific act or occurrence . . . inherent in a duty that arises from . . . state employment.@ 74 S.W.3d at 537.  After weighing various policy concerns we agreed with the Board that Adirectly results@ meant Aprimary cause,@ not proximate cause.  *See id*. at 551.

Regardless of whether the proper interpretation of the language at issue is proximate cause or primary cause, however, it simply would not make sense to interpret Adirect result@ to mean sole cause.  Limiting the exclusion to accidents solely caused by the insured=s being under the influence of alcohol would reserve its application to rare instances where the accident was unrelated to impaired judgment or dulled driving response to adverse conditionsCperhaps the rare case of alcohol poisoning.  Such an interpretation would render the provision practically meaningless.

---

[3]     In fact, the policy at issue defines Aaccidental bodily injury@ as a violent, external accidental bodily injury *resulting, directly and independently of all other causes* from an accident, except as excluded by the policy.

11

Furthermore, as the Board correctly noted in its proposed findings, the deleted paragraph was inconsistent with our prior decision in *Employees Retirement System v. Benge*, in which we explicitly stated:

> As in the case of an agency=s interpretation of its own regulations or a statute entrusted to
>
> the agency=s administration, the Board=s interpretation of a policy exclusion is entitled to
>
> judicial respect regarding any uncertainty.

942 S.W.2d 742, 745 (Tex. App.CAustin 1997, writ denied).

Because the Board=s interpretation was within its statutory authority and entitled to judicial respect, we overrule Linda Edwards=s second issue.

## CONCLUSION

Having overruled all of Linda Edwards=s issues, we affirm the judgment of the district court.

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   August 26, 2004